## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **HEMP INDUSTRY LEADERS OF TEXAS, SABHIE KHAN** | | |
| *Plaintiffs*, | § | |
| | § | |
| | § | |
| **V.** | § | |
| | § | |
| **CITY OF ALLEN,** | § | NO. **4:24-cv-00944** |
| **THE CITY OF ALLEN POLICE DEPARTMENT, CITY OF** | § | |
| **ALLEN POLICE CHIEF STEVE** | § | **(JURY TRIAL DEMANDED)** |
| **DYE (IN HIS Individual and Official Capacities)** | § | |
| **and UNKNOWN ALLEN POLICE OFFICERS (in their official capacities and individually),  SHERIFF JIM SKINNER AND UNKNOWN COLLIN COUNTY SHERIFF'S OFFICE DEPUTIES  (in their official capacities and individually),** | § | |
| | § | |
| **AND** | § | |
| | § | |
| **THE UNITED STATES DRUG ENFORCEMENT ADMINISTRATION and UNKNOWN DEA AGENTS (in their official capacities and individually), NSI LAB SOLUTIONS; HIGHER TESTING, LLC; PHARMLABS, LLC** | § | |
| *Defendants.* | § | |

---

## PLAINTIFFS' ORIGINAL COMPLAINT

---

TO THE HONORABLE UNITED DISTRICT JUDGE FOR THE EASTERN DISTRICT OF TEXAS, SHERMAN DIVISION:

Hemp Industry Leaders of Texas ("H.I.L.T.") and Sabhie Khan, Plaintiffs, complaining of City of Allen, City of Allen Police Department, Allen Police Chief Steve Dye (in his individual and official capacity), Unknown Allen Police Officers (in their official capacities and individually), The United States Drug Enforcement Administration (hereafter "DEA"), and Unknown DEA Agents (in their official capacities and individually), NSI Lab Solutions, Higher Testing, LLC, and Pharmlabs, LLC, Defendants, and for Cause of Action would show the following with Plaintiffs seeking only Temporary and Permanent Injunctive relief with Attorney's Fees:

## **<u>INTRODUCTION</u>**

Following the federal legalization of hemp by Congress in 2018, promptly mirrored by Texas in 2019, consumable hemp businesses began appearing in Texas and across the United States. This new market brought the promise of opportunity, inspiring entrepreneurial journeys through a countless number of innovative businesses created since that time. By unlocking the potential of hemp, the idea of generational wealth has become a real possibility for families and individuals who may have previously felt that dream was out of reach.

2

However, the story of a hard-working, honest businessman and his family trying to make their way in an emerging, highly regulated industry, taking necessary actions to remain compliant, is not supposed to end with a barrage of governmental entities using the law as a sword to deny him such an opportunity and instead make him into a criminal. This suit is brought pursuant to 42 U.S.C. § 1983 et seq., which covers civil action for deprivation of rights, 42 U.S.C. § 1985 for violations of constitutional rights, the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution and applicable tort law of Texas also addressed herein, are Plaintiffs' federal claims and pendent state law claims.

## **<u>JURISDICTION</u>**

This complaint arises under the United States Constitution. The Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

This complaint is brought pursuant to 42 U.S.C. §1983: Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Venue is also proper in the Sherman Division of the Eastern District of Texas since the conduct complained of herein occurred within Collin County, which is within the geographical area assigned to the Eastern District of Texas, Sherman Division.

Venue is also proper in the Sherman Division of the Eastern District of Texas because the Defendants are residents or is a Texas Municipal Corporation in this Division and Plaintiffs are residents of the Division.

## **PARTIES**

1.      At all times herein mentioned, Plaintiffs Hemp Industry Leaders Texas ("H.I.L.T.") is an organization duly formed and operating under the laws of the State of Texas and who has members residing within the jurisdiction of this Court.[1]

2.      At all times herein mentioned, Plaintiff Sabhie Khan, hereafter Khan, was a resident of the State of Texas and the City of Allen, Texas, residing within the jurisdiction of this Court.

3.      Defendant, STEVE DYE, is the Chief of Police for The City of Allen Police Department. Said Defendant is responsible, as Chief of Police, for the conduct of the police officers in his employ and ensuring that his police officers, employees, servants and agents obey the laws of the State of Texas and the United States. Defendant DYE is being sued in his individual and official capacity as Chief of

---

[1] See Exhibit "A," a true and correct copy of Affidavit Velador, incorporated herein by reference.

Police for The City of Allen Police Department, and, therefore, said Defendant is synonymous with THE CITY OF ALLEN AND ALLEN POLICE DEPARTMENT. Defendant DYE may be served with process at Allen Police Department, 205 W. McDermott Drive, Allen, Texas 75013.

4.      Defendants UNKNOWN ALLEN POLICE OFFICERS, at all times material to this complaint, were duly appointed and acting police officers of the Allen Police Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or City of Allen. These UNKNOWN ALLEN POLICE OFFICERS are being sued in their individual capacities.

5.      Defendant, CITY OF ALLEN, at all times material to this Complaint, its actions and/or omissions were under color of state law, and the City of Allen is a Texas Municipal Corporation, existing and operating pursuant to Article XI of the Texas Constitution, the Texas Local Government Code, § 1.001, et.seq., LOC. GOV'T., and to the Charter of the City of Allen. Defendant, City of Allen, may be served through its Mayor: The Honorable Baine Brooks, Mayor, City of Allen, at Allen City Hall, 305 Century Parkway, Allen, Texas 75013.

6.      Defendants SHERIFF JIM SKINNER AND UNKNOWN COLLIN COUNTY SHERIFF'S DEPUTY POLICE OFFICERS, at all times material to this complaint, were duly appointed and acting police officers of the Collin County

Police Department, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the State of Texas and/or Collin County, Texas. These   UNKNOWN COLLIN COUNTY SHERIFF'S DEPUTY POLICE OFFICERS are being sued in their individual capacities.

7.     Defendant  the  UNITED  STATES  DRUG  ENFORCEMENT ADMINISTRATION, at all times material to this Complaint, its actions and/or omissions were under color of federal and state law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the United States, the State of Texas and the City of Allen.

8.     Defendants UNKNOWN DEA AGENTS, at all times material to this complaint, were duly appointed and acting federal agents of the United States Department of Justice's Drug Enforcement Administration, acting under color of law, to wit, under color of statutes, ordinances, regulations, policies, customs and usages of the United States, the State of Texas and the City of Allen. These UNKNOWN DEA AGENTS are being sued in their individual capacities.

9.     NSI Lab Solutions (hereafter "NSI"), a Florida Corporation, registered agents are  Melissa Halter and C T CORPORATION SYSTEM 1200 SOUTH PINE ISLAND ROAD, PLANTATION, FL 33324, and has contacts with the State of Texas by its Food and Environment Safety Analytical Lab providing testing on

Hemp products that are distributed for human consumption within the State of Texas.

10.     Higher Testing, LLC (hereafter "Higher Testing"), is a Limited Liability Company in the State of Oklahoma and its registered agent is Ty G. Matlock, 707 SOUTH ROLAND ROAD, SUITE 6, ROLAND, OK 74954 and has contacts with the State of Texas by its Higher Testing Lab providing testing on Hemp products that are distributed for human consumption within the State of Texas.

11.     Pharmlabs, LLC (hereafter "Pharmlabs"), is a Limited Liability Company operating in the State of California, and it's registered agent is Greg Magdoff, 3421 Hancock St., 2nd Floor, San Diego, CA 92110 and has contacts with the State of Texas by its lab providing testing on Hemp products that are distributed for human consumption within the State of Texas.

## FACTS

12.     Plaintiff Sabhie Khan, a seventy- year old man who's never had anything more significant than a traffic ticket, began operating a retail business in the hemp industry.  Khan, is the manager of a business called Allen Smoke & Vape and Vape in the city of Allen, Texas. As manager of a retail operation in a highly regulated, newly legalized industry, Khan took great care to make sure they complied with all applicable laws and regulations, including requiring Certificates

of Analysis ("CoAs") for all products they sold.[2] But in August, Mr. Khan sat in shackles in a jail cell without bond for two days.[3] This man was arrested for selling products that are legal in the State of Texas; in fact, legal across the country. The product - hemp. His customers - seniors, veterans, and people struggling with pain.[4]

13.     While Khan and his fellow H.I.L.T. members quietly went about their legal business in Collin County, the DEA made outrageous attempts to subpoena all of their financial and client information, which was stayed by the federal judge for the DEA lawyers to respond.  They never did.  Instead, the Allen Police Department and the Collin County Sheriff's Office were purchasing legal hemp products steadily from H.I.L.T. members and executed a series of search and arrest warrants on August 27, 2024 after receiving Armstrong Lab reports that the products were above the total 0.3 Delta-9 concentrations.  Law enforcement seized Delta-8 and other legal products from Plaintiffs.  At issue in this matter is the seizure of legal products based upon an overbroad search warrant to seize "THC" (which would include legal hemp) and the conversion of legal THCA products by Armstrong Lab into illegal Delta-9. Further, Armstrong Lab failed to utilize appropriate, up-to-date hemp testing methodologies to protect the THCA during the processes; thereby, causing harm to

---

[2] See Exhibit "B," Affidavit Khan ¶2.
[3] See Exhibit "B," Affidavit Khan, ¶8.
[4] See Exhibit "B,"  Affidavit Khan ¶¶1, 10.

Plaintiffs. This failure to follow appropriate methodologies rendered the probable cause for the search warrant inaccurate and lacking.

14.     The City of Allen and the DEA began a concerted effort to circumvent the law regarding Hemp in May 2024.

15.     The DEA, Allen Police Department, and Collin County Sheriff's Office targeted Khan's small business, bringing the full force of the federal government, teamed with an aggressive, headline-seeking police department, and together they treated Khan like the kingpin of a drug cartel, despite hemp being legal.

16.     In May 2024, the City of Allen and the DEA began a concerted effort to circumvent the Texas and federal hemp laws in May 2024; instead, using otherwise lawful tactics in an unlawful manner against a law-abiding citizen and the legal company he operates.

17.     First, on May 2, 2024, the Allen Police Department sent a letter to various CBD and vape establishments in Allen, Texas, including several operated by members of H.I.L.T. in Allen, Texas, that their local businesses were selling 'illegal THC products' and they were in violation of the Texas Health and Safety Code Section 443 regarding 'delivery of a controlled substance.'[5] The letter alludes to 'various investigations' leading the department to believe that certain businesses

---

[5] See Exhibit "C," a true and correct copy of Allen PD letter dated 5/2/24 and incorporated herein by reference and Exhibit "A" p. 2 ¶2.

are operating in violation of the Texas Controlled Substances Act and Section 443.[6]

The letter states that items are being sold 'with a THC content well above the limits

prescribed in Chapter 443.'[7]

18.     Not long after, on June 25, 2024, Plaintiffs Khan and other members

of H.I.L.T., who are nothing more than small local business owners selling

consumable hemp products, e-cigarettes, vapes and cigarillos, ashtrays and related

items, received administrative subpoenas from the DEA demanding:

> "Records in the business's possession containing identifying
> information for the owner(s) of the business, including government
> issued IDs, residential addresses, phone numbers, and vehicles used
> for business purposes…financial accounts….bank account
> numbers…any accounts used to purchase inventory, pay for utilities
> and/or upkeep of the business facilities, and accounts used to pay
> employees, sources of inventory, distributors, and transportation
> services." [8]

These subpoenas were subsequently stayed by Judge Mazzant of the Eastern District,

via order of the court dated July 26, 2024.[9]  The Court ordered the DEA to respond

to the movant's allegation that the subpoenas were without lawful authority.

However, no response to the Motion to Quash was ever filed.

---

[6] See Exhibit "C."

[7] See *Id.*

[8] See Exhibit "D," 6/25/24 DEA Subpoena and Exhibit "B," Affidavit of Khan line 6, true and
correct copies incorporated herein by reference, and Exhibit "A" p. 2 ¶2.

[9] Exhibit "E."

19.     Days after receiving the DEA subpoenas, on June 28, 2024, Plaintiffs Khan and other H.I.L.T. members then received a notice from the City of Allen stating that the city was considering rezoning certain areas amending the local zoning codes in a manner that would prohibit hemp-related businesses from operating in certain parts of town. [10] The Zoning Ordinance at issue was in contravention of the Texas Health & Safety Code, which prohibits this type of regulation.   Section 443.003 of the Code states:   "LOCAL REGULATION PROHIBITED. A municipality, county, or other political subdivision of this state *may not* enact, adopt, or enforce a rule, ordinance, order, resolution, or other *regulation* that prohibits the processing of hemp or the manufacturing or sale of a consumable hemp product as authorized by this chapter."  (emphasis added).

20.     The attempt at rezoning was pushed to September 3, 2024 after David Sergi, attorney for Plaintiffs, began correspondence with the City of Allen's Attorney, Kaleb Smith, regarding Section 443.003 of the Texas Health and Safety Code prohibiting a municipality from adopting a rule prohibiting the sale of consumable hemp.[11]

21.     Despite local hemp businesses pushing back against the aggressive and intimidating approach taken by law enforcement, on August 27, 2024, the Allen

---

[10] See, attached as Exhibit "F," 6/28/24 Zoning Letter and Exhibit "A" ¶3.
[11] See Exhibit "G" and "H" Sergi Letter, true and correct copies incorporated herein by reference, p. 2 ¶¶1-2.

Police Department nevertheless executed a series of search warrants on several H.I.L.T. members' businesses in Allen, Texas.[12] Officers seized numerous items from Allen Smoke & Vape and arrested and charged multiple H.I.L.T. members with Manufacture/Delivery of a Controlled Substance, a second degree felony, including Sabhie Khan.[13] [14]  Many of those arrested on August 27 were held without bond for two days until August 29 when they were finally able to post bonds and be released.[15] The aforementioned search warrants were executed in coordination with the DEA and in direct violation of Judge Mazzant's order staying enforcement of the DEA's subpoenas. The DEA used the Allen Police Department to do what it could not. Not only did the DEA fail to respond but it went to great lengths to do an end run around a federal judge's order.

22.    On September 18, 2024, H.I.L.T. members in Allen received a second letter from the Allen Police Department.[16] The letter reminded the stores as a "second notice of violation" that APD has determined products are being sold with THC concentrations in violation of Chapter 443 of the Texas Health and Safety Code.[17]

---

[12]  Exhibit "A" Pg. 3 ¶1.
[13] See Exhibit "B," line 8 and Exhibit "A," p. 3 ¶1.
[14] .https://www.dallasnews .com/news/2024 /08/27/ allen-police-raid-9-hemp-shops-accused-of-selling-products-with-illegal-levels-of-thc/.
[15] Exhibit "A," p. 3 ¶1.
[16] See Exhibit "I," a true and correct copy of the 9/18/24 letter Allen PD incorporated herein by reference, and Exhibit "A," p. 2 ¶3-Pg. 3.
[17] Exhibit "I" ¶¶1-2.

23.     On September 24, 2024, after creative re-wording, the City of Allen passed a different Zoning Ordinance limiting locations of new smoke shops (more than 50% of sales related to the sale of cigarettes, electronic cigarettes, vapes, cigars, tobacco, pipes, and other smoking supplies), which effectively accomplished what Section 443.003 attempted to prevent. Though existing shops could continue, they would not be able to expand and any new shops would be restricted to certain locations.[18]

**Hemp and the 2018 Farm Bill**

24.     The treatment of hemp in the United States has changed drastically in the past five years. Having been included in the DEA's Schedule of Controlled Substances for many years, the Agriculture Improvement Act of 2018 (hereinafter, the "2018 Farm Bill") authorized the production of hemp and removed hemp and hemp seeds from the DEA Schedule of Controlled Substances. This bill was signed into law on December 20, 2018, and took effect on January 1, 2019.  It defined hemp as "the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." Under this law, the only limitation

---

[18] See https://starlocalmedia.com/allenamerican/news/allen-smoke-shop-ordinance-passes/article_c2fe977e-7b7f-11ef-a483-f32eefd3fc78.html

regarding the federal definition of hemp was that the plants and products could not exceed 0.3% delta-9 THC, a specific form of THC found in abundance in some species of *Cannabis sativa L*. 7 USC 1639o.   Notably, this definition does not reference or otherwise restrict or prohibit tetrahydrocannabinolic acid, hereafter referred to as "THCA," other than to specifically state that "acids" are included within the definition of hemp. THCA is an acid produced by the hemp plant and is thus not controlled when its delta-9 tetrahydrocannabinol concentration does not exceed 0.3 percent on a dry weight basis.

25.     THCA is non-intoxicating substance "...naturally occurring cannabinoid that is abundant in raw cannabis buds, and does not have psychoactive qualities when consumed in its unprocessed form. THCA is converted into a psychoactive THC chemical when heated, smoked, or vaped." [19]

26.     In response to the passage of the 2018 Farm Bill, the Texas legislature passed, and on June 10, 2019, Governor Greg Abbott signed into law Texas House Bill 1325 ("H.B. 1325").  H.B. 1325 established a hemp program in Texas and delegated regulatory authority over consumable hemp products to the Texas Department of State Health Services (hereinafter, "DSHS").  H.B. 1325 also formalized by law what DSHS did in the interim – it defined hemp in Texas the same as it was defined federally and removed hemp and THCs in hemp from the definition

---

[19] https://www.hanleycenter.org/what-is-thca/

of "controlled substances" under the Texas Controlled Substances Act, Chapter 481 of the Texas Health & Safety Code.  From that point, only Delta-9 products with greater than 0.3 percent delta-9 THC were covered by Texas Health and Safety Code §481.103 Penalty Group 2.   This definition does not address tetrahydrocannabinol acids (THCA) specifically; thereby, any THCA would be legal as long as its Delta-9 content is 0.3 or below THC content.

27.     The Texas Agriculture Code requires that the Texas Department of State Health Services (DSHS) promulgate rules for the manufacture, distribution, and retail sale of consumable hemp products and these were adopted and published on August 2, 2020, including licensure.[20] This Administrative Code Section lists an acceptable, otherwise legal, level of tetrahydrocannabinol (hereafter "THC") content concentration on dry weight basis to be 0.3 percent or less for Delta-9 THC.

**Testing of Hemp**

28.     One of the key aspects of determining the legality of hemp before sale to the public is testing by an accredited laboratory. The laboratories must follow an exhaustive set of regulations and standards maintained by the Texas Department of State Health Services.   These labs then issue a Certificate of Analysis for the

---

[20] See Exhibit "J," a true and correct copy of Texas Administrative Code, Title 25, Chapter 300, Subchapter A, Section 300.101, incorporated herein by reference.

products. Known as COAs, legal hemp businesses must keep the reports and share them with their customers and local authorities.

29.    The Texas Agriculture Code requires testing of hemp in Sec. A 112.003. DEPARTMENT RULES. (a) The department [DSHS], after consulting with the governor and attorney general, shall adopt…:

> a.    "...a procedure for testing, using post-decarboxylation or another similarly reliable method, the delta-9 tetrahydrocannabinol concentration of hemp produced in this state…"

30.    DSHS provides for further rules regarding testing prior to distribution or sale:   Title 25 Texas Admin. Code Rule § 300.01 Testing Required:

> "(a) All hemp or hemp derivatives used in the manufacture of a consumable hemp product must be tested as appropriate for the product and process by an accredited laboratory to determine:
>
> (1) the presence and concentration of cannabinoids;
>
> (2) the presence and concentration of THC; and
>
> (3) the presence or quantity of residual solvents, heavy metals, pesticides, and harmful pathogens.
>
> (b) A Certificate of Analysis documenting tests conducted under this subchapter shall:

(1) be made available to the department upon request in an electronic format before manufacture, processing, or distribution into commerce; and

(2) include measurement of uncertainty analysis parameters."

31.     DSHS has a process in place to handle testing after harvesting and THC limit overages in Texas Admin. Code Rule § 30.303:

a.  "A consumable hemp product that exceeds the acceptable hemp THC level or is adulterated in a manner harmful to human consumption shall not be sold at retail or otherwise introduced into commerce in this state.

b.  A hemp manufacturer, processor, or distributor shall provide the results of testing required by §30.301 of this subchapter (relating to Testing Required) to the department upon request.

c.  The registrant shall provide the testing results required under §30.301 of this subchapter to a consumer or the department upon request.

d.  A license holder shall not use an independent testing accredited laboratory unless the license holder has:

          i.  no ownership interest in the accredited laboratory; or

        ii.  holds less than a ten percent ownership interest in the accredited laboratory if the accredited laboratory is a publicly-traded company.

e.  A license holder must pay the costs of raw and finished hemp product testing in an amount prescribed by the accredited laboratory selected by the license holder.

f.  The department shall recognize and accept the results of a test      performed by an accredited laboratory, including at an institution of higher education.

g.  The department may require that a copy of the test results be sent directly to the department and the license holder.

32.    Tex. Admin. Rule 24.26 governs testing:

a.  "Laboratories shall use appropriate, validated methods and procedures for all testing activities and evaluate the measurement of uncertainty.

b.  At a minimum, analytical testing of samples for delta-9 tetrahydrocannabinol concentration levels must use

18

post-decarboxylation or other similarly reliable methods approved by the Department.

c.  The testing methodology must consider the potential conversion of delta-9 tetrahydrocannabinolic acid (THCA) in hemp into delta-9 tetrahydrocannabinol (THC) and the test result reflect the total available THC derived from the sum of the THC and THC-A content. Testing methodologies meeting these requirements include, but are not limited to, gas or liquid chromatography with detection.

d.  Alternative testing protocols will be considered by the Department if they are comparable and similarly reliable to the baseline established under the Department program. Alternative testing protocols must be requested of the Department in writing and approved in writing by the Department, provided they meet the requirements of this subchapter."

33.  Tex. Admin. Rule 300.604 governs destruction:

a.  "The department shall request court-ordered destruction of a sampled, detained, or embargoed

consumable hemp product if the court finds the article is misbranded or adulterated.

b. After entry of the court's order, an authorized agent shall supervise the destruction of the article.

c. The claimant of the article shall pay the cost of the destruction of the article.

d. If the article is being destroyed in whole or in part due to a THC content that meets the definition of a schedule I drug, the article must be destroyed by a reverse distributor authorized by the United States Drug Enforcement Agency."

34.     In addition, DSHS has been enjoined from indicating on its website or elsewhere that Delta-8 THC in any concentration is considered a Schedule I Controlled Substance.[21] Delta-8 is legal hemp, falling within the definition of hemp in both Texas and Federal Farm Bills.

**Agency Rulemaking Post-2018 Farm Bill**

35.     After the Agriculture Improvement Act of 2018 (2018 Farm Bill) Section 10113 amended the Agricultural Marketing Act of 1946 (AMA), the USDA

---

[21] *Tex. Dep't of State Health Servs. v. Sky Mktg. Corp.*, 2023 Tex. App. LEXIS 7448 (Tex.App.-Austin, 2023)(pet. for review filed 1/1/2024). See Exhibit "K," 11/8/21 *Sky Marketing* Order and "U" Court of Appeals Affirmed Order, a true and correct copy incorporated herein by reference.

in its establishment of a domestic hemp program, promulgated rules for testing of

tetrahydrocannabinol (hereafter THC)  in Delta-9 hemp and THCA:

> "Since not all testing methods include decarboxylation, AMS [the Agriculture Marketing Service which is an agency of the USDA] is requiring that the total THC, which includes the potential conversion of tetrahydrocannabinolic acid (THCA) into THC, be reported and used for purposes of determining the THC content of a hemp sample. Since not all testing methods include decarboxylation, AMS is requiring that the total THC, which includes the potential conversion of tetrahydrocannabinolic acid (THCA) into THC, be reported and used for purposes of determining the THC content of a hemp sample.….Testing must be conducted using post-decarboxylation or other similarly reliable methods where the total THC concentration level measured includes the potential to convert THCA into THC….The total THC, derived from the sum of the THC and THCA content, shall be determined and reported on a dry weight basis [with the 0.3 percent threshold …based on *total available* delta-9 THC, which is the sum of THCA and delta-9 THC in the plant material]." [22]

36.    Later, the U.S Department of Justice Drug Enforcement Agency

promulgated rules and procedures that provided direction to its law enforcement

agents when Chief Terrence L. Boos issued his letter dated May 13, 2024.[23]  Chief

Boos writes to Shane Pennington:

> "This is in response to your letter dated April 25, 2024, in which you requested the control status of tetrahydrocannabinolic acid (THCA) under the Controlled Substances Act (CSA). For THCA, we are assuming THCA is referencing delta-9-THCA. The Drug

---

[22] https://www.federalregister.gov/documents/2021/01/19/2021-00967/establishment-of-a-domestic-hemp-production-program
[23] See Exhibit "L" Chief Boos's letter, a true and correct copy incorporated herein by reference.

Enforcement Administration (DEA) conducted a review of the CSA and its implementing regulations with regard to these questions." [24]

37.    In his letter, following the USDA lead in determining  THCA should be combined with Delta-9, Chief Boos equates THCA to Delta-9, thereby rendering THCA illegal unless the product contains .3 percent or less concentration of THC. However, in its raw form, THCA is a "...non-intoxicating and abundant [substance] in live cannabis plants." [25]  In other words, THCA is legal hemp.

**Hemp, THCa, and Delta-9 THC Defined**

38.    Congress did not define THCA when it codified the definition of hemp, other than to include acids as legal hemp.   7 USC 1639o. SEC. 297A. DEFINITIONS. ''In this subtitle: ''(1) HEMP.— The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta- 9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."  THCA is the naturally occurring acid in hemp and is not included as a Delta-9 substance.

39.    The sole distinction between lawful cannabis (hemp) and unlawful cannabis (marijuana) is the concentrations of delta-9 THC in the harvested

---

[24] Exhibit "A," ¶1.
[25] https://www.diamondcbd.com/thca-vs-delta-9.

material.[26]  THCA, or the acids of hemp, were included within the definition of hemp and are not contraband under the federal law.

40.     In the recent past, "[t]he DEA has expressly stated that hemp and hemp products are not controlled substances."[27] As opposed to Delta-9, "[t]he quantity and concentration of other THC isomers, and other cannabinoids and forms of THC, including THCa, are totally irrelevant with respect to the legal status of harvested hemp and hemp products."[28] The legal definition of "hemp" includes its "acids." All cannabinoids in their acidic forms contain a carboxylic acid group that degrades (i.e., converts) to a different compound when subjected to a "post decarboxylation" testing method.   In other words, using a post-decarboxylation method to test harvested hemp degrades the pertinent acids in the hemp plant, rendering the term "acid" superfluous. A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."[29]

41.     Further the Ninth Circuit, confirming that Delta-8 products are legal, found:

> "A straightforward reading of §1639*o* [of the Federal Farm Bill of 2018] yields a definition of hemp applicable to all products that are

---

[26] Exhibit "M," 9/11/24 Kight letter, p. 3, ¶2, a true and correct copy incorporated herein by reference.
[27] Exhibit "M," p. 3, ¶4.
[28]  Exhibit "M," p. 2, ¶2.
[29] See *Id*. at p. 6, ¶4.

sourced from the cannabis plant, contain no more than 0.3 percent delta-9 THC, and can be called a derivative, extract, cannabinoid, or one of the other enumerated terms."[30] "The conclusion that AK Futures' delta-8 THC products are lawful necessarily depends on the veracity of the company's claim that these products contain no more than 0.3 percent delta-9 THC."[31] "Further evidentiary support is not required at this [preliminary injunction] stage."[32]

42.     Most of what Defendants seized from Plaintiff Khan on August 27, 2024 was Delta-8.[33]

43.     The Southern District of Texas has cited the *AK Futures* case. Referring to vaporizer THC pens, the U.S. District Court in *Ashh* held that "[t]hey can plainly be used to smoke lawful products like tobacco, essential oils, and hemp-derived CBD."[34] State and federal agencies are not free to bend the Hemp Law to satisfy their political or other local interests.

> "A state cannot evade the [2018] Farm Laws express preemption of laws prohibiting the interstate transportation of industrial hemp by criminalizing its possession and delivery…[and on] remand, the district court should evaluate whether Indiana's law violates the express preemption clause of the Farm Bill while keeping in mind the extent to which the Law reserves to the states the authority to regulate the production of industrial hemp."[35]

---

[30] *AK Futures LLC v. Boyd St. Distro, LLC*, 35 F.4th 682 (9th Cir. 2022).
[31] *Id.* at 691.
[32] *Id.*
[33] Exhibit "B," line 8.
[34] *Ashh Inc. v. DJ Imp. Inc.,* 2022 U.S. Dist. LEXIS 244224, *4 (S.D. Tex. 2022). See *AK Futures LLC v Boyd Street Distro LLC*, 35 F.4th. 682, 690-92 (9th Cir. 2022).
[35] *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3dd 541 (7th Cir. 2020).

44.     Notably, there is no mention of Delta-8 or THCA in the following: Texas Agriculture Code, Chapter 113, Sec. A 113.052. PROGRAM RULES. "(a) The department shall adopt rules to establish a state hemp program that: (1) promotes the cultivating and processing of hemp and the commercial sale of hemp products; and (2)  regulates hemp production in this state."

   a.   Texas Agriculture Code, Chapter 113, Sec.A112.003: "(a)(2)a procedure for testing, using post-decarboxylation or another similarly reliable method, the delta-9 tetrahydrocannabinol concentration of hemp produced in this state."  Testing of the hemp must be done within **30** days prior to harvest.[36] Certificates of Analysis provide the results of that harvest testing allowing the substance to be sold at commercial establishments ***if concentrations are at 0.3 or less percent Delta-9.*** (emphasis added)

45.     Only Delta-9 is illegal, THCA and Delta-8 are not mentioned because they fall within the definition of hemp.

46.     In *Bio Gen., LLC v. Sanders*,[37] the Court references committee notes in their report on the 2018 Farm bill: "'[t]he Conference Report for the 2018 Farm Bill states that, "[w]hile states and Indian tribes may limit the production and sale of hemp and hemp products within their borders, . . . such states and Indian tribes [are

---

[36] See Texas Department of Agriculture_Hemp_FAQ_ 04-01-20.pdf
https://texasagriculture.gov/Portals/0/forms/COMM/Hemp/ TDA_Hemp_FAQ_04-01-20.pdf.
[37] 690 F.3dd 927 (E.D. Ark., Sept. 7, 2023).

not permitted] to limit the transportation or shipment of hemp or hemp products through the state or Indian territory." Additionally, the Conference Report explains that "state and Tribal governments are authorized to put more restrictive parameters on the production of hemp but are not authorized to alter the definition of hemp or put in place policies that are less restrictive."

47. Hemp and hemp-derived products such as Delta-8 or THCA products containing 0.3% or less Delta-9 THC products are legal, which Defendants seized in this matter, along with other hemp-derived products.[38]

## Current Testing Methods Examined

48. At issue in this case and others across the country is the inclusion of THCA in methods of testing that convert the non-intoxicating substance of THCA into Delta-9 THC; *thereby, making THCA illegal in post-testing.* The THCA substances as possessed by Khan were not Delta-9 nor illegal but were only made thus by the government's request and payment for testing by Armstrong Lab, as seen in this matter.[39] Armstrong Lab is literally creating Delta-9 from the THCA with their testing.[40] Armstrong Lab tests hemp by utilizing two different testing methods, but samples "...will also be confirmed by GC/MS to identify the primary

---

[38] See Exhibit "B," line 8. "THCP is a naturally occurring phytocannabinoid found in cannabis…" https://leafwell.com/blog/what-is-thcp.
[39] See Exhibit "N" ¶7.14-7.19.
[40] See Exhibit "O," Email dated 10/2/2024, a true and correct copy incorporated herein by reference.

cannabinoid and to confirm the presence of delta-9 THC." [41]

49.     In Plaintiff Khan's case alone, Defendants presumably spent over $2,000 for testing from Armstrong Forensic Laboratory, Inc., (hereafter "Armstrong Lab") which will provide expedited results for extra fees with some discounting for law enforcement.[42]  While Liquid Chromatography is a readily available process at labs in Texas, Defendants were willing to spend exorbitant amounts to get the result they want with Gas Chromatography testing that necessarily heats the product to high temperatures (turning legal THCA into illegal total Delta-9 per Armstrong's calculations).[43]

39.     GC/MS is the process of "[g]as chromatography with flame ionization detection (GC-FID) [that] is a widely used analytical technique that allows for the separation, identification, and quantification of volatile and semi-volatile compounds in a sample. [The] Sample is injected into a heated inlet, vaporizing the sample at ca. 350 °C." [44]

40.     Even Armstrong Lab admits the following information on its website: "The evaluation of the concentration of delta-9 THC in Cannabis-related products is

---

[41] See Exhibit "O," p. 1 ¶4.
[42] See Exhibit "O," p. 1 and Exhibit "N," ¶¶ 7.14-7.19.
[43] See Exhibit "N," "O," and https://bpal.uthscsa.edu/, https://pcl.tamu.edu/chromatography/, https://atslab.com/ chemical-analysis/liquid- chromatography-lab/.
[44] https://pccl.chem.ufl.edu/gas-chromato graphy-gc-flame-ionization-detection/#:~:text=Gas%20chromatography%20with%20flame%20ionization,a%20signal%20proportional%20to%20concentration.

based on the total delta-9 THC level, which is the sum of the delta-9 THC and THCA concentrations."[45]    However, "[a] liquid chromatography ultraviolet (LC-UV) method, which used methanol as the organic solvent for both extraction and separation, was developed for hemp compliance testing."[46]  virtual-library/abstracts/rapid-and-accurate-liquid-chromatographic-       method-hemp-compliance.

41.    Hemp products require testing by DSHS before distribution for sale:  Title 25 Texas Admin. Code Rule § 300.01 Testing Required:

> "(a) All hemp or hemp derivatives used in the manufacture of a consumable hemp product must be tested as appropriate for the product and process by an accredited laboratory to determine:
>
> > (1) the presence and concentration of cannabinoids;
> >
> > (2) the presence and concentration of THC; and
> >
> > (3) the presence or quantity of residual solvents, heavy metals, pesticides, and harmful pathogens.
>
> (b) A Certificate of Analysis documenting tests conducted under this subchapter shall:

---

[45] https://aflab.com/totaldelta9thcisdelta9anddelta9thca/.

[46] https://www.ojp.gov/ncjrs/virtual-library/abstracts/rapid-and-accurate-liquid-chromatographic-method-hemp-compliance.

(1) be made available to the department upon request in an electronic format before manufacture, processing, or distribution into commerce; and

(2) include measurement of uncertainty analysis parameters."

50. Andrea Holmes is a tenured University Professor of Chemistry with a background in synthetic organic chemistry, biomedical research, analytical testing of starting materials and products, and has vast experience with cannabinoid manufacturing which includes either synthesis or extraction from plants, followed then by isolation, purification, and analytical testing to ensure quality of the final products.[47] Having previously co-founded two companies in the hemp and wellness space, she has intricate knowledge of the entire hemp process from seed growth all the way through to the last step of testing the final products for quality. [48]  Because this testing step is amongst the most important steps of the process since proper testing ensures proper quality, Holmes built an Iso-Certified hemp testing lab from scratch in order to learn testing from start to finish, inside and out, since this step is the decision maker if a product can [should] go to the shelf for

---

[47] Exhibit "P," Affidavit Andrea Holmes line 2, a true and correct copy incorporated herein by reference.
[48] *Id.*

human consumption. [49] Her work includes several peer-reviewed publications on cannabinoid pharmacology as well as the co-authoring of two cannabis textbooks. Currently, she teaches full-time, serves as a scientific advisor for several hemp and cannabinoid companies across the world, and co-owns three retail hemp dispensaries in Nebraska. [50]

51. There are several analytical testing methods that can be used to test for cannabinoid identification and concentrations in hemp and hemp derived products.[51]

52. High Performance Liquid Chromatography (HPLC) is a powerful method to identify and quantify cannabinoids including THCA, delta-9 THC, and THC isomers.[52] Advantages of using HPLC include high resolution of peaks, high sensitivity, ability to conduct high throughput experiments, low cost analysis, and published reliable experimental methods.[53] Limitations of HPLC include potential peak overlaps, variable peak integrations, errors in sample preparation, and subjective data processing

---

[49] *Id.*
[50] *Id.*
[51] See Exhibit "P," line 3.
[52] See Exhibit "P," line 4.
[53] *Id.*

that can be "tweaked" manually thus masking impurities in order to pass sub-par products.[54]

53. Gas Chromatography Mass Spectrometry (GCMS) is also a powerful analytical method to identify and quantify cannabinoids.[55] Advantages include high sensitivity, quick analysis, and the ability to discern complex isomers by using a derivatization method.[56] Disadvantages include the fact that GCMS includes heat in the process and THCA gets decarboxylated to delta-9 THC.[57] This leads to test results that show a total THC content which is the sum of THCA plus delta-9 THC.[58] Thus, even if a compliant product has less than 0.3% delta-9 THC, it could test higher if there is THCA present.[59] Using this type of GC MS method would therefore not be suitable to measure delta-9 THC levels in a sample as it would not separate the delta-9 THC from THCA.[60] To overcome this challenge, analytical methods in GCMS now include a chemical protection protocol

---

[54] *Id.*
[55] See Exhibit "P," line 5.
[56] *Id.*
[57] *Id.*
[58] *Id.*
[59] *Id.*
[60] *Id.*

for the acidic part of THCA.[61] This chemical protection prevents the decarboxylation of THCA and can then be separated from delta-9 THC.[62]

54.   Just as the conversion of CBD to other cannabinoid isomers has led to the proliferation of hemp-derived products, both HPLC and GCMS  methods have had to evolve quickly to distinguish these isomers that can occur during processing.[63] When extracting CBD from hemp for example, CBD may comprise 10% of the plant by weight, but typically there are 3-7 other minor cannabinoids that are usually low concentrations, e.g. 0.1%-0.5%.[64] But when CBD is then converted to other cannabinoids, 15-20 or more minor cannabinoids can form alongside the primary product.[65] Because CBD-converted products can afford much more complex mixtures for analysis, the methodology for testing these products is accordingly more complex to distinguish the many components in the mixture.[66]

55.     Armstrong Lab confirmed on October 15, 2024 that it ***does not use any chemical protection*** for the THCA:  [per Dr. Wouters via email]

"The heat of the gas chromatograph (either GCMS or GCFID)

---

[61] *Id.*
[62] *Id.*
[63] See Exhibit "P," line 6.
[64] *Id.*
[65] *Id.*
[66] *Id.*

causes decarboxylation of any THCA that may be present to provide a "TotalDelta-9 THC" concentration. But since the 0.3% Delta-9 THC limit applies to the Total Delta-9 THC concentration (post-decarboxylation), we don't need to do anything to prevent decarboxylation in the analysis. In fact, the Texas hemp regulations require the testing to provide the decarboxylated result.  But if you want to see the delta-9 THC and THCA results separately, we can do that but the analysis would be performed using a different technique: liquid chromatography (HPLC). But even in that case, the 0.3% limit is applied to the sum of the delta-9 THC and the contribution from the THCA."[67]

56.    Consequently, Gas nor Liquid Chromatography will protect the integrity and chemical structure of the THCA *as tested by Armstrong*, even though the chemical protection process is available to the lab.[68]  This failure to protect the integrity of the law enforcement submission and to conduct a process of examining evidence for a criminal case in such a manner is tantamount to evidence tampering, knowing destruction of evidence in a pending criminal investigation, failure in the chain of custody of said evidence, and the violation of Plaintiff Khan's Due Process

---

[67] See Exhibit "W," 10/15/24 email re:Armstrong  testing
[68] *Id.*

constitutional rights.  Chemical protection of the THCA within a product is entirely possible and within the bounds of appropriate testing protocols in hemp testing.[69]

57.     In an analysis as to whether the destruction of evidence violates a defendant's Due Process rights, "...evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." [70] Armstrong Lab is abundantly clear in its website and in any questioning (even via email) that all THCA testing results in a conversion of the THCA into a sum total of THCA and Delta. They claim they don't have a duty to do otherwise and this works to law enforcement's benefit but to the detriment of Plaintiffs' Due Process right.  Neither Liquid or Gas Chromatography will maintain the integrity of the THCA to determine what, if anything, a suspect, defendant, or, in this case, Plaintiff Khan, *was in possession of* at the time of the seizure.  Khan can no longer prove his innocence and cannot obtain comparable evidence by other reasonably available means as *the evidence is no longer available*.

58.     In Andrea Holmes' professional opinion, *"...testing hemp derived cannabinoids in the US has been a huge problem due to the huge variability in between labs and the lack of uniform protocols amongst labs and the pressure for*

---

[69] Exhibit "P,", ¶¶ 5-7.
[70] *California v. Trombetta,* 467 U.S. 479, 489(1984).

*products to test below 0.3 % delta-9 THC leading to "lab shopping" to use the lab*
*that gives the desired result."[71]*

59.    Hemp business owners and managers, such as Plaintiffs H.I.L.T. and Khan should be allowed to rely upon Certificates of Analysis that have previously determined the product to be legal.

60.    The *Maldonado* Court found that the business owner's property rights were irreparably harmed wherein *legal* products were made illegal and seized by law enforcement.[72]   Commercial establishments are protected by Due Process as "Texas law finds a property interest where [a business] entity "has a legitimate claim of entitlement that is created, supported, or secured by rules or mutually explicit understandings."[73]   In *Jabary*, the plaintiff business had a right derived from its certificate of occupancy to sell Hookah and K-2.[74]   Similarly, Defendant Dye threatens Khan's Allen Smoke & Vape Certificate of Occupancy in his general letter to H.I.L.T. businesses.[75] Business establishments, such as Plaintiffs, are also entitled to demand a proper, constitutional warrant before search and seizure of their products.[76]   It's impractical to expect Plaintiffs to test every product they purchase

---

[71] Exhibit "P," ¶8.
[72] See generally, *City of Corpus Christi v. Maldonado*, 398 S.W.3d 266 (Tex. App. Corpus Christi,  2011).
[73] *Jabary v. City of Alle*n, 547 Fed. Appx. 600, 606 (5th Cir. 2013) citing *City of Houston v. Carlson*, 393 S.W.3d 350, 357 (Tex. App.-Houston [14th Dist.] 2009).
[74] *Id*. at 606.
[75] See Exhibit "I," p. 2.
[76] *See v. Seattle*, 387 U.S. 541(1967).

to double check the Delta-9 content, they should be able to rely upon their CoAs, which is built into the cost of the product.[77]

**The Instant Case / Actions of Defendants**

61.     In July 2024, Khan retained counsel who filed a Motion to Quash the June 2024 DEA Subpoena on behalf of Plaintiffs H.I.L.T. and others.[78]

62.     On July 24, 2024, this Court stayed the enforcement of the subpoenas until the DEA filed a response so the matter could be fully considered by the Court.[79] The DEA never responded to the Motion to Quash, despite being ordered to do so.

63.     On August 27, 2024, Allen Police Officers, Collin County Sheriff's Office Deputies and DEA Agents raided Plaintiffs Khan's business located at 1546 E. Stacy Rd., Ste. 197, Allen, TX 75002, searched and seized numerous items  and arrested Mr. Khan.[80]

64.     Khan serves veterans and the elderly who have aches and pains, post-traumatic stress disorders and a multitude of other physical ailments.[81]  About 15 percent of their customers are veterans and elderly.[82] All products are derived from

---

[77] Exhibit "P," ¶9.

[78] See Exhibit "Q," a true and correct copy of the Motion to Quash DEA Subpoena incorporated herein by reference.

[79] See Exhibit "E" Order, a true and correct copy incorporated herein by reference.

[80] See Exhibit "N," Search Warrant, a true and correct copy incorporated herein by reference and Exhibit "B," line 8, and see .https://www.dallasnews .com/news/2024 /08/27/ allen-police-raid-9-hemp-shops-accused-of-selling-products-with-illegal-levels-of-thc/.

[81] See Exhibit "B," line 6.

[82] *Id.*

the hemp plant.[83]  Hemp comprises only about 35 percent on average of what Plaintiffs sell.[84]  Plaintiff Khan, as manager, had the certificates of analysis for all products available online to view, along with a sign outside that no one under the age of 21 is allowed in the store.[85]

65.    Yet, on August 27, 2024, law enforcement raided Khan's business when a barrage of unknown officers from the Allen Police Department and the Sheriff's Office came through the door of the store.[86]  They surrounded Khan, who is the manager of Allen Smoke & Vape, and went through the counters and showcases while asking Khan questions about the products.[87]  Khan felt cornered and they kept asking him about "delta stuff."[88] The unknown Officers told Khan that they had a search warrant.[89]  Khan was ultimately arrested for the sale of illegal controlled substances, a Second Degree Felony for Manufacturing a Controlled Substance, for selling a legal substance.[90]

66.    The officers took everything:  all of the computers, Khan's phone, Khan's laptop and ipad, the drives out of two old desktop computers, and all the Delta 8 products.  The officers took approximately $8,000.00 to $10,000.00 in legal

---

[83] See Exhibit "B," line 1.
[84] *Id.*
[85] See Exhibit "B," line 4.
[86] Exhibit "B," line 8.
[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.*

inventory with Certificates of Analysis:  about sixty percent was Delta-8, about 25% THCA, and about 15% THCP and THCJD.[91]   Khan has been traumatized by his arrest and is now having trouble sleeping while being very nervous and guarded all of the time.[92]  Khan has no pending charge in District Court as of this filing for the Second Degree Felony.

67.    The type of testing and when testing is performed on Hemp matters, along with how Hemp is stored and handled.

68.    Khan's affidavit includes those documents that law enforcement gave to him on the day of the raid:  the search warrant and two inventory sheets.[93]   The Search Warrant was signed on August 26, 2024[94] by Magistrate Dan Wilson, a retired, presumably visiting judge, in Collin County on August 26, 2024.[95] The warrant indicates that the violations related to 481.120(b)(2) of the Texas Health and Safety Code which is the Code Section for "a Class A misdemeanor if the amount of marihuana delivered is one-fourth ounce or less and the person committing the offense receives remuneration for the marihuana" and Section 481.113(b) which is the Offense: Manufacture or Delivery of Substance in Penalty Group 2 or 2-A.

---

[91] See Exhibit "B," line 8.
[92] *Id.*
[93] See Exhibit "B," pp. 4-7 and Exhibit "N," Search Warrant, a true and correct copy incorporated herein by reference.
[94] Exhibit "N," p. 2.
[95] See Exhibit "N," p. 2 and https://jwarbitrations.com/arbitrators/wilson-dan.

69.     The wrongful actions of the City of Allen Police Department have cast a negative public perception on the entire hemp industry, and by extension, H.I.L.T. Many members of the public now associate hemp businesses, including those within our network, with illegal activity despite members' strict adherence to the law.[96] This stigma has already caused substantial harm to H.I.L.T. and its members, undermining the significant efforts and investments H.I.L.T. has made to educate the public and authorities about the legality and benefits of hemp production and sales.[97]

70.     The confiscation of Khan's inventory, which consists solely of hemp-derived products compliant with the 2018 Farm Bill, has not only caused a financial loss to that individual H.I.L.T. member, but has also discouraged other hemp businesses from participating in H.I.L.T.'s events and initiatives.[98]  Multiple members have reported a decrease in sales as a result of the increased scrutiny and fear of similar police actions, further exacerbating the negative financial impact on the hemp industry at large.[99]

71.     The City of Allen, the Collin County Sheriff's Office and the Allen Police Department have created a climate of fear among H.I.L.T. members,

---

[96] Exhibit "A" p. 3 ¶2.
[97] *Id.*
[98] Exhibit "A" Pg 4 ¶1.
[99] *Id.*

discouraging them from participating in normal business activities and interactions with law enforcement.[100]  Many members have expressed concerns that they too may be targeted by law enforcement despite operating within the confines of the law.[101] This fear directly hampers H.I.L.T.'s ability to promote and support the hemp industry in Texas, undermining their core mission.[102]

72.    The actions of the Allen Police Department have deterred potential new members from joining H.I.L.T.[103] They have had several inquiries canceled from individuals who, before the raid, were interested in becoming members and engaging in lawful hemp commerce.[104]  Plaintiff H.I.L.T.'s ability to grow and effectively represent the broader hemp community in Texas is now diminished.[105]  The Texas Health and Safety Code definition of a Controlled Substance:   "... a substance, including a drug, an adulterant, and a diluent, listed in Schedules I through V or Penalty Group 1, 1-A, 1-B, 2, 2-A, 3, or 4.  The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance.  *The term does not include hemp, as defined by Section 121.001, Agriculture Code, or the tetrahydrocannabinols in hemp.*"[106] Sec. 121.001 of the Texas Agriculture Code

---

[100] Exhibit "A" Pg 4 ¶2.
[101] *Id*.
[102] *Id*.
[103] Exhibit "A" Pg 4 ¶3.
[104] *Id.*
[105] *Id.*
[106] Tex. Health & Safety Code, Sec. 481.002(5)(emphasis added).

provides the following:  "DEFINITION.  In this chapter, "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

73.    Khan only sells legal hemp-derived products, no marijuana.[107]  The warrant allowed for the search and seizure of financial and other records and digital devices related to "...illegal controlled substances including Tetrahydrocannabinol (THC)," monies and other items from "drug transactions" made from "engaging in Tetrahydrocannabinol (THC) trafficking," and "Controlled Substances, namely Tetrahydrocannabinol (THC)."[108]  The Items listed in the inventory include: "(5) Boxes contraband from main storefront (1) Box contraband from the office"  and six digital devices.[109]

74.    Since that time, the raid of Plaintiff Khan's business and his arrest have been highlighted on various news stations. Khan has been subjected to shame and ridicule as a result of the knowingly false statements made by law enforcement, the media, and specifically Defendant Dye, the Collin County Sheriff's Office, and the Allen Police Department.

---

[107] See Exhibit "B," line 2.
[108] See Exhibit "N," pp. 1-2.
[109] Exhibit "N," pp. 3-4.

75.     Despite being engaged in a lawful business, selling products that are legal under state and federal law, Khan has been labeled a "drug dealer" and characterized as a criminal instead of the law-abiding businessman that he is.

## COUNT 1: UNREASONABLE SEIZURE—SEARCH AND SEIZURE WITHOUT PROBABLE CAUSE

76.     Plaintiffs reiterate and adopt each and every one of the foregoing paragraphs, as if fully set forth herein.

77.     Defendants lacked probable cause to apply for, and obtain, the Search Warrant on August 26, 2024 for the raid of Khan's business and lacked probable cause to search Allen Smoke & Vape under the color of that Warrant.

78.     Officers acted with willful and reckless disregard of the law when requesting a search warrant to seize "THC."  Only THC with Delta-9 concentrations of more than 0.3 concentrations are illegal.

79.     As such, the search and seizure that is the subject of this action was conducted unlawfully and violates the Fourth Amendment.  Defendants lacked probable cause to search Plaintiff's business premises and seize the items that were taken. These illegal actions taken under color of law are actionable under 42 USC §1983. Officers entered the areas of the business that were not accessible to the public where only employees were allowed to be and seized items.[110] "The

---

[110] See Exhibit "B," Line 8.

businessman, like the occupant of a residence, has a constitutional right to go about his business free from unreasonable official entries upon his private commercial property." [111]

80.    When reviewing search warrants for probable cause, "…magistrates should only rely on the facts "found within the four corners of the affidavit" accompanying the request for a warrant." [112] Further, the Court held that "…overly generalized and unsubstantiated statements that seek to imply illegal conduct based on legal conduct cannot serve as a legitimate basis for a probable-cause determination." [113]

81.    The warrant authorizes seizure of Tetrahydrocannabinols or THC; however, the Texas Health and Safety Code exempts *"hemp, as defined by Section 121.001, Agriculture Code, or the tetrahydrocannabinols in hemp*." Sec. 481.002(5)(Emphasis added).  Consequently, the warrant is overbroad as it seeks to seize substances specifically exempted from the Code.

82.    Sec. 121.001 of the Texas Agriculture code provides this DEFINITION. " In this chapter, "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts,

---

[111] *See v. Seattle*, 387 U.S. 541, 546 (1967).
[112] *Kennedy v. State*, 338 S.W.3d 84, 91-92 (quoting *State v. Bradley*, 966 S.W.2d 871, 873 (Tex. App.—Austin 1998, no pet).
[113] *Id*. at 99.

cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

83.    The warrant should have included language to seize any "Tetrahydrocannabinols exceeding 0.3 percent Delta-9 concentrations" or those trafficking activities associated with "Tetrahydrocannabinols exceeding 0.3 percent Delta-9 concentrations."

84.    The Texas Health and Safety Code provides in 443.151 that a consumable hemp product, if tested before processing or after processing with a Delta-9 concentration of 0.3 or less by an accredited laboratory, it may be sold for human consumption:

      a.  A consumable hemp product must be tested as provided by:(1) Subsections (b) and (c); or(2) Subsection (d).

      b.  Before a hemp plant is processed or otherwise used in the manufacture of a consumable hemp product, a sample representing the plant must be tested, as required by the executive commissioner, to determine:

            i.  (1) the concentration of various cannabinoids; and (2) the presence or quantity of heavy metals, pesticides, and any other substance prescribed by the department.

c. Before material extracted from hemp by processing is sold as, offered for sale as, or incorporated into a consumable hemp product, the material must be tested, as required by the executive commissioner, to determine: (1) the presence of harmful microorganisms; and(2) the presence or quantity of:  (A) any residual solvents used in processing, if applicable; and (B) any other substance prescribed by the department.

d. Except as otherwise provided by Subsection (e), before a consumable hemp product is sold at retail or otherwise introduced into commerce in this state, a sample representing the hemp product must be tested: (1) by a laboratory that is accredited by an accreditation body in accordance with International Organization for Standardization ISO/IEC 17025 or a comparable or successor standard to determine the delta-9 tetrahydrocannabinol concentration of the product; and (2) by an appropriate laboratory to determine that the product does not contain a substance described by Subsection (b) or (c) in a quantity prohibited for purposes of those subsections.

e.   A consumable hemp product is not required to be tested under Subsection (d) if each hemp-derived ingredient of the product:(1) has been tested in accordance with: (A) Subsections (b) and (c); or (B) Subsection (d); and (2) does not have a delta-9 tetrahydrocannabinol concentration of more than 0.3 percent.

85.     Plaintiffs complied with the Texas Health and Safety Code Section 443.151 and provided all CoAs for products sold at Allen Smoke & Vape.[114]  Law enforcement was either unaware of this section or disregarded the law in the Texas Health and Safety Code, cherry-picking what sections to investigate the Plaintiffs under.  Defendants do not mention in the search warrant the QR codes on products purchased by undercover personnel nor did Defendants perform their due diligence to check those CoAs to determine the legality of items sold by Plaintiffs.

86.     Plaintiff Khan complied with the Code; yet, the business was searched, items seized and Khan put in custody.  After failing to review QR codes or review 443.151 of the Texas Health and Safety Code, the Defendants sought testing that failed to follow current, appropriate methodologies that preserve the integrity of the evidence.[115]

---

[114] Exhibit D lines 2-3.
[115] Exhibit P line 5.

87.    THCA is a non-intoxicating substance "...naturally occurring cannabinoid that is abundant in raw cannabis buds, and does not have psychoactive qualities when consumed in its unprocessed form. THCA is converted into a psychoactive THC chemical when heated, smoked, or vaped." [116]

88.    Armstrong Lab makes "[t]he evaluation of the concentration of delta-9 THC in Cannabis-related products is based on the *total delta-9 THC level, which is the sum of the delta-9 THC and THCA* concentrations." [117]

89.    All of the items that were purchased by the officers that Armstrong Lab determined exceeded the 0.3 Delta-9 THC concentration were legal THCA products in their natural form when possessed by Khan:  Voodoo Exotics Mob Boss, Dream Black Mamba, and Torch Sour Gorilla THCA Live Rosin.[118]  As such, at the time of purchase prior to testing, those products were legal and had Certificates of Analysis performed at the time of harvest that were available to law enforcement to review.[119] All items seized on August 27, 2024 were legal as well.

90.    It was only after application of the processes by Armstrong Lab and the inclusion of all THC together did the items fall under illegal "***total*** Delta-9 THC concentration" per the search warrant.[120]

---

[116] https://www.hanleycenter.org/what-is-thca/
[117] https://aflab.com/totaldelta9thcisdelta9anddelta9thca/  (emphasis added).
[118] See Exhibit "N," 7.14-7.19 and Exhibit "B," line 9.
[119] See Exhibit "B," line 9.
[120] See Exhibit L ¶¶ 7.15, 7.19

91.    Defendants sought a search warrant after testing a product that did  not require further testing under Texas or Federal law, sought testing that changed the chemical structure of the products that rendered it illegal from a lab that lumps all THC into a Delta-9 concentration, utilized a lab which failed to follow current protocols that call for chemical protection of the THCA, and baselessly sought a search warrant that was overbroad and vague to seize legal items.

92.    Indeed, officers did seize legal items: about sixty percent of that seizure by Defendants was Delta-8, about 25% THCA, and about 15% THCP and THCJD, all of which are legal under the current definitions expressed herein.[121] Defendants were unreasonable and the seizure of Plaintiffs' property is not entitled to qualified immunity as they have violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizure of his property.

93.    "Probable cause exists when the totality of circumstances at the time of arrest would lead a reasonable person to think the defendant committed or is committing a crime."[122]  There is no legal basis for the Search Warrant as all items in possession of Khan and Allen Smoke & Vape *were and are legal*.  Further, officers have likely omitted, misrepresented, or mistakenly suggested a violation of law (in a very nuanced area of the law that the magistrate may have no experience

---

[121] See Exhibit "B," line 8.
[122] *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013).

with) had occurred and misled the magistrate into signing the Warrant for entry into and seizing of legal items in a lawful business.   Armstrong Labs explained their process on their website and this was available to law enforcement at the time of seizure.

94.     The Texas Health and Safety Code very clearly sets out the definition of a Controlled Substance as

> "... a substance, including a drug, an adulterant, and a diluent, listed in Schedules I through V or Penalty Group 1, 1-A, 1-B, 2, 2-A, 3, or 4.  The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance.  *The term does not include hemp, as defined by Section 121.001, Agriculture Code, or the tetrahydrocannabinols in hemp*."[123]   Section 121.001 of the Agriculture Code states that the acids are legal hemp and not included with the Delta-9 concentration portion of the definition.

95.     The Court held in *City of Corpus Christi v. Maldonado*,[124] "… a seller does have a vested property right in the possession of legal, physical items of inventory that it owns."  Commercial establishments have Due Process rights.[125]

96.     Officers  are  presumed  to  know  the  law  and  Plaintiffs  have  not

---

[123] Tex.. H & S Code, Sec. 481.002(5)(Emphasis added).
[124] 398 S.W.3d 266, 210 (Tex.App.-Corpus Christi 2011).
[125] *Jabary v. City of Alle*n, 547 Fed. at 606.

committed an offense against the State of Texas or the United States. It is not reasonable for a trained officer to believe the law has been violated when indeed it has not.[126] All of the unknown officer Defendants, including Chief Dye, who participated or supervised the execution of the warrant were aware and disregarded the law or willfully disregarded the law as to hemp, Delta 8, Delta 9 and THC concentrations.

97. "Although an officer's mistake of fact can still justify a probable cause or reasonable suspicion determination for a traffic stop, an officer's mistake of law cannot."[127] In *United States v. Lopez-Soto*,[128] the Court found the stop and search based upon the officer's mistaken belief of the law to be a violation of the Fourth Amendment. The search warrant should be deemed invalid due to overbroad and vague, mistake of law and lack of probable cause.

98. The search warrant at issue in this case is vague and overbroad as it sought to seize Tetrahydrocannabinol, generally; consequently, legal products would be seized even if they contain at or less than 0.3% Delta-9 THC on a dry weight basis. As a result, the warrant is overbroad, without a legal basis and lacks probable cause. The basis for the search warrant is also flawed as the officers

---

[126] See *Harris County Precinct Four Constable Dep't v Grabowski*, 922 S.W.2d 954 (Tex. 1996).
[127] *United States v. Nicholson*, 721 F.3dd 1236, 1238 (10th Cir. 2013) (citing *United States v. Tibbetts*, 396 F.3dd 1132, 1138 (10th Cir. 2005)).
[128] 205 F.3dd 1101, 1114 (9th cir. 2000).

purchased legal products *under the current law* and through the scientific manner in which the product was tested after the purchase, the Armstrong Lab created an illegal product.

99.     Law enforcement is clearly not keeping the product under appropriate environmental conditions: "*time, light, heat, and humidity are all factors that contribute to the change in cannabinoids in a sample. Thus, even if a product may contain less than 0.3% THC on the retail shelf on day 1, it may turn non-compliant to above 0.3% THC over time or when exposed to light, heat, or other environmental conditions.*"[129] Armstrong Lab informed law enforcement, per the warrant, that the first purchase on 7/10/24 had a "total Delta-9 THC concentration of 26.8%."[130]  The second purchase of Mob Boss on 8/14/24 *from the same batch as the first purchase* returned a "...a total Delta-9 concentration…to be 17.5%."[131] The same product should not test positively for Delta-9, per the Certificates of Analysis, nor should the same batch have wildly different results, suggesting improper care by law enforcement and the lab.

100.   At the time of the search warrant, the Farm Bill had been in effect for five years and the Texas Administrative Code had been in effect for about four years. Officers had a duty as peace officers and any higher-ranking officers to ensure that

---

[129] Exhibit "P," line 8.
[130] Exhibit "N," ¶¶ 7.14 and 7.15.
[131] *Id*. at 7.18 and 7.19.

the items to be seized were indeed contraband.

101.   The highest ranking law enforcement officers of Collin County, however, do not appear to fully grasp the law or bend it to suit their political agenda. In early September 2024 just after the raid, the law enforcement heads, including Defendants Dye and Skinner, recorded a conversation regarding THC containing inaccurate legal information engineered to scare an unknowing public.  Skinner states "....anyone sits in the entrance to our jail for 30 minutes, and what they're going to see is continually all day and all night... THC, overdose cases that come in the back door…"[132]  The American Addictions Centers states that "[t]hough life-threatening marijuana overdoses may be unlikely, dose-dependent toxicity is quite possible; individuals who consume enough of the primary psychoactive component in marijuana and other cannabis-derived products are at risk of experiencing a range of unpleasant effects."[133]  Skinner has no factual basis to support THC is causing a high rate of overdose cases anywhere; indeed, Collin County Government reports Fentanyl as the "top overdose death."[134]

102.   Defendant Dye states that THC "...***must be*** regulated, checked, safe and

---

[132]https://www.cbsnews.com/texas/news/north-texas-police-chiefs-address-smoke-shop-concerns-after-undercover-raids/  at 00:44.
[133] https://greenhousetreatment.com/marijuana-abuse/overdose/
[134]https://www.collincountytx.gov/Services/Health-Care-Services/Lists/DepartmentNews/NewsDisp.aspx?ID=8

legal."[135]  ***THC regulations are in place***:  The Texas Health and Safety Code and DSHS have extensive regulations, which law enforcement seems to be blissfully unaware of, previously detailed herein.  Texas Agriculture Code, Chapter 113, Sec. A 113.052. PROGRAM RULES. requires that "(a) The department shall adopt rules to establish a state hemp program that: (1) promotes the cultivating and processing of hemp and the commercial sale of hemp products; and (2)  regulates hemp production in this state."   DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A.  Dye says it again later: "Again, you know, there's no regulation."[136]

103.   Dye refers to high concentrations of "...7 to 78% concentration, the average was 29% Yeah. And the legal amount is point three or less. So yeah, it's strikingly over."[137]  Dye doesn't qualify his statements with reference to Delta-9, just an overbroad "THC."

104.   It's unclear if Dye is operating outside the law due to misunderstanding or because he has appointed himself as the local, uneducated THC Czar:   "I believe that the lawmakers are really good people who never intended for this to happen. So how do we work with them on getting this back where it needs to be?"[138]  He goes

---

[135] *Id*. at 1:44. (emphasis added)
[136] *Id*. at 7:25.
[137] *Id.*
[138] *Id*. at 9:31.

on:  "But as we all know, those *unintended consequences* occurred, and now here we are, our communities and across the entire state, as you referenced, we're dealing with this, and we need to have that legislative fix."[139]

105.   Even though Defendant Dye states "we are not concerned about hemp or CBD" his officers seized thousands of dollars of items of Hemp on August 27, 2024.[140]  What law enforcement seems to be after is the funds as Chief Ellenburg of McKinney in Collin County states:  "This is a billion dollar industry just do the math on what it costs to lease one of these buildings to sell this product. We've looked at some of our investigations and estimating these businesses are making a half a million dollars a month."[141]

106.   The acts of the officers on August 27, 2024 violated Plaintiff's right to be free from an unreasonable search of his business premises and the unreasonable seizure of his property in violation of the Fourth Amendment of the United States Constitution and the Texas Constitution Article 1, Section 9, enforceable through 42 USC §1983 due to the overbroad and vague warrant and seizure of non-contraband.

107.   Dye was fully aware that Plaintiffs hold lab reports for their products: "I've been hearing, well, hey, we've got a lab report that says it's point three or less.

---

[139] Id. at 10:13 (emphasis added).
[140] *Id*. at 11:32 and Exhibit "B," line 8.
[141] Exhibit "V" at 14:03.

It's legal. We don't know it's illegal."[142]  Dye's officers are misleading magistrates with the warrants and seizing legal products anyway. Dye is fine with disregarding the law as he stated, ***"What we're doing is we're seeing a real problem right in front of us, and in policing, it's not all about just the law the black and white."***[143]

108.   The unknown DEA agent Defendants may also be held liable for these actions. "The question is merely whether petitioner, if he can demonstrate an injury consequent upon the violation by federal agents of his Fourth Amendment rights, is entitled to redress his injury through a particular remedial mechanism normally available in the federal courts."[144]  In *Bivens*, the United States Supreme Court held that federal agents may be sued for violations of the fourth Amendment and would be "...entitled to recover money damages for any injuries he has suffered as a result of the agents' violation of the [Fourth] Amendment."[145]

### Equitable and Injunctive Relief

109.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

   i.      Return of all seized inventory;

---

[142] *Id*. at 18:31.
[143] *Id*. at 22:11.
[144] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 397 (1971).
[145] *Id.* at 397.

ii.     Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

iii.    Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances;

iv.     Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

v.      All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9

THC;

vi.    Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.    That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.    That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.    Plaintiffs seek attorney's fees.

## COUNT 2:  FOURTEENTH AMENDMENT - FAILURE TO INTERVENE

110.   Plaintiffs reiterate and adopt each and every one of the foregoing paragraphs, as if fully set forth herein.

111.   There are unknown law enforcement officers, to be named later, who assisted with the illegal search and seizure of Plaintiffs' business premises.

112.   The unknown officers and Defendants should have known, based on recognized state law, that the products being seized were legal under Texas and federal law at the time they assisted in executing the search and seizure of Plaintiffs' property.

113.   All the officers who were present had an obligation to intervene in the face of unlawful and unauthorized police action perpetrated by other law enforcement officers against innocent law-abiding citizens they're sworn to protect. Not only did they fail to intervene, but they also assisted in the illegal acts committed by their fellow law enforcement officers on August 27, 2024.

114.   Officers are presumed to know the law and that Plaintiffs did not commit an offense against the State of Texas or the United States; therefore, probable cause was not established.

115.   It is not reasonable for a trained officer to believe the law has been violated when indeed it has not.[146]   All the officer Defendants who participated or supervised, including Defendant Chief Dye, were aware and disregarded the law or

---

[146] See *Harris County Precinct Four Constable Dep't v Grabowski,* 922 S.W.2d 954 (Tex. 1996).

were mistaken as to the law regarding hemp, Delta-8, Delta-9 and THC concentrations.  Officers should have intervened to stop the search. Sec. 121.001 of the Texas Agriculture code provides this   DEFINITION. " In this chapter, "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

116.   THCA   is   non-intoxicating   substance   "...naturally   occurring cannabinoid that is abundant in raw cannabis buds, and does not have psychoactive qualities when consumed in its unprocessed form. THCA is converted into a psychoactive THC chemical when heated, smoked, or vaped." [147]

117.   At the time of the raid, all products seized by Defendant officers were legal and all had Certificates of Analysis for tests performed that were available to law enforcement to review.[148]  Defendants seized product that was about sixty percent Delta-8, about 25% THCA, and about 15% THCP and THCJD, all legal products under current laws.[149]

118.   Clearly the officers were unsure of what to take as they were asking

---

[147] https://www.hanleycenter.org/what-is-thca/
[148] See Exhibit "B," line 8.
[149] *Id.*

Khan, as they went through the counters and showcases, about the products.[150]
Khan let them know that they were legal under the Farm Bill.[151]

119. "Although an officer's mistake of fact can still justify a probable cause
or reasonable suspicion determination for a traffic stop, an officer's mistake of law
cannot."[152] In *United States v. Lopez-Soto*,[153] the Court found the stop and search
based upon the officer's mistaken belief of the law to be a violation of the Fourth
Amendment.

120. For bystander liability, a violation of rights must have occurred, an
officer has an opportunity to reduce harm, and an officer decides to do nothing.[154]
All Defendants would have been made aware of the warrant, what to seize, and
where and when the seizure would take place, as directed by unknown officers. All
Defendants should have been aware of the legality of 0.3% or less Delta-9 THC,
hemp, and other products according to the Texas Health and Safety Code as
described herein. Defendant officers could have easily checked the certificates of
analysis online for the legality of the products. Officers clearly had notice of such
by the QR codes on the products and disregarded the law.

---

[150] *Id.*
[151] *Id.*
[152] *United States v. Nicholson*, 721 F.3dd 1236, 1238 (10th Cir. 2013)(citing *United States v. Tibbetts,* 396 F.3dd 1132, 1138 (10th Cir. 2005)).
[153] 205 F.3dd 1101, 1114 (9th Cir. 2000)
[154] *Kitchen v. Dallas County*, 759 F.3d 468, 481 (5th Cir. 2014).

121.    Defendants had an opportunity to intervene prior to the execution of the warrant and seizure of the products, a Fourth Amendment violation.  Defendants did nothing to stop the search or unlawful seizure.

122.    Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

     i.    Return of all seized inventory;

     ii.    Plaintiffs seek the ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

     iii.    Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances;

     iv.    Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

     v.    All testing performed on post-harvested hemp and packaged

hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi.    Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.    That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.    That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas

Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

      ix.    Plaintiffs seek attorney's fees.

## COUNT 3: MUNICIPAL LIABILITY UNDER 42 U.S.C §1983

123.   Plaintiffs reiterate and adopt each and every one of the foregoing paragraphs, as if fully set forth herein.

124.   The City of Allen and Defendant Chief Dye, at all relevant times, have maintained a policy, custom, or practice that has been the cause, the moving force, behind the violation of citizen's rights.  Specifically, this policy, custom, or practice involves:

    a.  The City of Allen's and Defendant Chief Dye's continued reliance upon Armstrong Lab's Gas Chromatography or other testing which does not chemically protect THCA from Delta-9 in the results or reliance upon any laboratory test results that utilize heat to determine Delta-9 concentrations wherein heat causes the formation of Delta-9;

    b.  Knowledge by the City and Defendant Chief Dye that certain hemp possession is legal;

    c.  The City of Allen's and Defendant Chief Dye's failure to properly train its officers in the investigation of Hemp related and THC products;

d. The City of Allen's continued endorsement of search warrants seeking seizure of "THC" without further specifications on the type of contraband sought;

e. The City of Allen's express approval of enforcement of the illegal, overbroad warrants by continuing to authorize the use of law enforcement resources to execute said warrants on legal businesses; and

f. Continued investigations of the possession of THC with willful disregard for the legality of certain amounts of THC and types of Hemp for prosecution in the City of Allen Municipal Court or the district or county courts of Collin County.

g. The continued use of and payments to s for Gas Chromatography testing that involves the use of high heat thereby changing the chemical structures of legal hemp as a basis for search warrants;

125.   The above-described policy, custom, or practice, i.e., City of Allen's continued reliance upon generic warrants for seizure of THC, lack of training, and continued endorsement of search warrants based upon testing that causes legal contraband to become illegal was the direct and proximate cause of Defendants' violation of the Plaintiffs' constitutional rights under Fourth, Fifth, and Fourteenth Amendments, enforceable through 42 U.S.C. 1983.

126.   Defendant Dye states that THC "...**must be** regulated, checked, safe and

legal."[155] ***THC regulations are in place***:  The Texas Health and Safety Code and DSHS have extensive regulations, which law enforcement seems to be blissfully unaware of, previously detailed herein.  Texas Agriculture Code, Chapter 113, Sec. A 113.052. PROGRAM RULES. requires that "(a) The department shall adopt rules to establish a state hemp program that: (1) promotes the cultivating and processing of hemp and the commercial sale of hemp products; and (2)  regulates hemp production in this state."  DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A.  Dye says it again later: "Again, you know, there's no regulation."[156]  The top law enforcement officer within the City of Allen is unaware of the regulations in place regarding hemp in Chapter 443 of the Texas Health and Safety Code.

127.  May 2, 2024 – Allen Hemp Retailers receive first letter/notice from Allen PD with list of products they believe contain an illegal amount of THC.[157]     August 27, 2024 – Allen Police Department and the Collin County Sheriff's Department with DEA agents executed a series of search warrants on Hemp Retail locations around the City of Allen. Sabhie Khan (2/5/53), Ali Alsawaeer (8/20/82), and Basim Mustafa (1/10/93) are

---

[155] Exhibit V at 1:44. (emphasis added)
[156] *Id*. at 7:25.
[157] See Exhibit "C."

arrested during these raids and charged with MAN/DEL CS PG 2 OR 2-A >= 1G < 4G.[158]   September 18, 2024 – Defendant Dye sends memo to Allen Hemp Retailers titled "Second notice of violation regarding the sale of illegal THC products…" with a list of illegal products being sold around the city. [159]

128.   Defendant Dye is clearly directing these activities, he signed the September 18, 2024 letter personally.[160] He's broadcasting his statements made in early September via the internet.[161]

129.   Defendants are not properly training their employees as they themselves do not understand or know the law or simply disregard it.

130.   Defendants have engaged in pervasive, systematic constitutional violations over the past several months with the execution of numerous search and arrest warrants in August and continuing to send threatening letters in September. Defendants are creating a climate of fear in which legal activities are being stifled.

131.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

     i.     Return of all seized inventory;

---

[158] See Exhibit "N," "B," and "L" p. 2 ¶2 - p. 3.
[159] See Exhibit "I."
[160]  See Exhibit "H" pg. 2
[161]  See Exhibit "V"

ii.     Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

iii.    Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances;

iv.    Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

v.     All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9

THC;

vi.     Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.    That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.   That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.     Plaintiffs seek attorney's fees.


## COUNT 4: CONSPIRACY TO VIOLATE CIVIL RIGHTS

132.   Plaintiffs reiterate and adopt each and every one of the foregoing paragraphs, as if fully set forth herein.

133.   Defendants STEVE DYE, THE DRUG ENFORCEMENT ADMINISTRATION ("DEA"), UNKNOWN ALLEN POLICE OFFICERS, AND UNKNOWN DEA AGENTS, conspired to violate Plaintiffs' statutory civil rights as more fully described in the foregoing paragraphs in violation of 42 U.S.C. § 1989, for which Defendants are individually liable.

134.   A civil rights conspiracy under section 1983 is generally defined as an agreement between parties, a combination of two or more persons acting in concert to commit an unlawful act to deprive a person of his Constitutional Rights, those Constitutional Rights are actually violated and damages result.[162] Plaintiff must specifically detail the alleged deprivation of his §1983 right of action before a conspiracy could be determined, and the conspiracy allegation is the method by which actors may be held accountable in the action.[163]

135.        Plaintiffs have clearly established violations of their 4th, 5th, and 14th Amendment Constitutional rights:  Defendants lacked probable cause in the search warrant that was overbroad and vague, Defendants used a known laboratory method which results in categorizing otherwise legal products as illegal,

---

[162] See generally, *Thore v. Howe*, 466 F.3dd 173(1st Cir. 2006); *Salinas v. Univ. of Texas-Pan Am.*, 74 Fed. Appx. 311, 314(5th Cir. 2003).
[163] *Thor v. Howe,* 466 F.3d at 179.

Defendants failed to exercise investigative due diligence to review any QR codes and CoAs, unknown Defendant officers failed to intervene to stop violations of Plaintiffs' rights, Defendants seized legal Delta-8 and other hemp-derived products and Defendants actions caused an Abuse of Court Processes.

136.    The Conspiracy lies in the efforts of a federal agency, namely the DEA, to conspire with a local agency, the City of Allen Police Department, the Collin County Sheriff's Office, the City of Allen, and unknown officers and agents.

137.    Timeline of Events:

a.  -        May 2, 2024 – Allen Hemp Retailers receive first letter/notice from Allen PD with list of products they believe contain an illegal amount of THC.[164]

b.  -         June 25, 2024 – DEA Subpoena Issued.[165]

c.  -        June 28, 2024 – Allen Hemp Retailers receive letter from City of Allen Director of Community Development re: Proposed amendment to the Allen Land Development Code to add a definition for "CBD Shop" and providing regulations for separation, development, and operational standards for CBD Shops. Hearing on the matter to be held on July 16, 2024.[166]

d.  -        July 15, 2024 – Sergi, Plaintiff's Counsel, sends a letter to the Allen City Attorney outlining that local regulation is prohibited by Section 443 of the Health and Safety code and the proposed changes to the Allen Land Development Code would be in violation of 443.[167]

e.  -        July 16, 2024 – Kaleb Smith emails Sergi back saying that the

---

[164] See Exhibit "C."
[165]  See Exhibit "D."
[166]  See Exhibit "E."
[167] See Exhibit "H,"a true and correct copy of 7/15/24 letter to City of Allen, incorporated herein by reference.

item had been removed from the P&Z agenda that evening and would be reconsidered at a later date.[168]

f. - July 24, 2024 – This Court stays the DEA Subpoena.[169]

g. - August 16, 2024 – Allen Hemp Retailers receive second letter from City of Allen Director of Community Development re: Proposed amendment to the Allen Land Development Code adding a definition for "Smoke Shop". Hearing to be held on September 3, 2024.[170]

h. - August 27, 2024 – Allen Police Department and the Collin County Sheriff's Department with DEA agents executed a series of search warrants on Hemp Retail locations around the City of Allen. Sabhie Khan (2/5/53), Ali Alsawaeer (8/20/82), and Basim Mustafa (1/10/93) are arrested during these raids and charged with MAN/DEL CS PG 2 OR 2-A >= 1G < 4G.[171]

i. - September 2, 2024 - Sergi sends letter to the Allen City Attorney.[172]

j. - September 18, 2024 – Allen Police Department sends memo to Allen Hemp Retailers titled "Second notice of violation regarding the sale of illegal THC products…" with a list of illegal products being sold around the city.[173]

k. - September 24, 2024 - Ultimately, a limitation in zoning was passed by the City of Allen as to where new smoke shops (more than 50% of sales related to the sale of cigarettes, electronic cigarettes, vapes, cigars, tobacco, pipes, and other smoking supplies), not applicable to current shop

---

[168] Exhibit "R," 7/16/24 City of Allen email, a true and correct copy incorporated herein by reference.

[169] See Exhibit "E," a true and correct copy of 7/24/24  Order staying subpoena incorporated herein by reference.

[170]  Exhibit "S," a true and correct copy of 8/16/24 City of Allen letter incorporated herein by reference.

[171] See Exhibit "N," "B," and "L" p. 2 ¶2 - p. 3.

[172] See Exhibit "T."

[173] See Exhibit "I."

owners who would be prohibited from expanding in current locations.[174]

l.  -        "'Smoke Shop' means a retail establishment utilized primarily for the sale of cigarettes, electronic cigarettes, vapes, cigars, tobacco, pipes, and other smoking supplies. On-site smoking or consumption is prohibited.  In addition to prohibiting minors from entering a Smoke Shop without the accompaniment of an adult, the following location requirements for a Smoke Shop will also be established:  300 feet from a single-family zoned property, church or other religious facility, public hospital or day care facility; 1,000 feet from a public, private, or parochial school; and 1,000 feet from another Smoke Shop that is in current operation.  It should be noted that the proposed regulations will potentially designate some existing businesses as legal nonconforming uses. As such, the attached proposed ordinance contains language pertaining to the vesting of existing Smoke Shops. There are not any provisions that would create an amortization and/or "sunset" of these legal nonconforming uses. All new uses will be required to adhere to the new regulations." [175]

138.   After the DEA's attempts to subpoena allegedly incriminating evidence from Plaintiffs failed, the DEA instead turned to local law enforcement to secure a search warrant from an unknowing District Court Judge, Dan Wilson, who is no longer on the bench but was apparently a visiting judge in August 2024.  That warrant, Exhibit L, lacked probable cause as it does not establish a criminal offense and fails to allege a criminal act that requires seizure of evidence.  Possession or Sale of THC alone is not a

---

[174] https://starlocalmedia.com/allenamerican/news/allen- smoke-shop-ordinancepasses/article_c2fe977e-7b7f-11ef-a483-f32eefd3fc78.html
[175] https://actv.org/CablecastPublicSite /show/4080?site=1

criminal act.  Only if the product exceeds a THC of more than 0.3 percent in concentration of Delta-9 does the sale of the product meet the definition of an illegal controlled substance in the Texas Health and Safety Code Ch. 443.

139.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

   i.      Return of all seized inventory;

   ii.     Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

   iii.    Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances;

   iv.     Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

v.      All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi.      Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.      That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.      That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and

to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.    Plaintiffs seek attorney's fees.

## COUNT 5: ABUSE OF PROCESS

140.    Collectively, Defendants, known and unknown, conspired to violate the civil rights of Plaintiffs. The DEA and UNKNOWN DEA AGENTS conspired with the COLLIN COUNTY SHERIFF'S OFFICE DEPUTIES, CITY OF ALLEN, THE CITY OF ALLEN POLICE DEPARTMENT, STEVE DYE, AND UNKNOWN ALLEN POLICE OFFICERS to violate Plaintiffs' Fourth, Fifth and Fourteenth Amendment rights.

141.    "'Abuse of process is the malicious use or misapplication of process in order to accomplish an ulterior purpose.'"[176] "To show abuse of process, a plaintiff must establish "(1) the defendant made an illegal, improper, or perverted use of the process, a use neither warranted nor authorized by the process, (2) the defendant had an ulterior motive or purpose in exercising such illegal, perverted, or improper use

---

[176] *D.A. v. United States,* 663 F. Supp. 3d 715, 43 (W.D. Tex. March 2023) (citing *Hunt v. Baldwin*, 68 S.W.3d 117, 129 (Tex. Civ. App. - Houston [14th Dist.] 2001)).

of the process; and (3) damage resulted to the plaintiff as a result of such illegal act."'[177] Defendants were thwarted in their attempts to obtain (what they mistakenly believed to be incriminating) evidence of lawful activity from the H.I.L.T. owners and Plaintiffs by the Order signed by U.S. District Judge Mazzant on July 24, 2024.[178] As a result, Defendants made an illegal, improper, or perverted use of court processes, a use that was neither warranted nor authorized by law, by obtaining and utilizing a Search Warrant without basis in probable cause.   Defendants' ulterior motive was to gather that same evidence as that requested in the DEA subpoena, along with seizing legal THC products, by presentation of a search warrant to an unknowing and unwary Texas State District Court Magistrate.  Defendants did so without worry of interference by the United States District Court.

142.   Plaintiffs have each individually and together been harmed. The warrant authorizes seizure of Tetrahydrocannabinols or THC; however, the Texas Health and Safety Code exempts *"hemp, as defined by Section 121.001, Agriculture Code, or the tetrahydrocannabinols in hemp*."[179] Consequently, the warrant is overbroad as it seeks to seize substances specifically exempted from the Code.

143.   Sec.   121.001   of   the   Texas   Agriculture   code   provides   this

---

[177] *Id.* at 43 citing *Moore v. Bushman*, 559 S.W.3d 645, 653 (Tex. Civ. App. - Houston [14th Dist.] 2018).

[178] See Exhibit "E."

[179] Tex. H & S Code, Sec. 481.002(5)(Emphasis added).

DEFINITION. " In this chapter, "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

144. The warrant should have included language to seize any "Tetrahydrocannabinols exceeding 0.3 percent Delta-9 concentrations" or those trafficking activities associated with "Tetrahydrocannabinols exceeding 0.3 percent Delta-9 concentrations."

145. Texas Health and Safety Code 443.151 provides as long as the hemp is tested prior to manufacture or processing, "e) A consumable hemp product is not required to be tested under Subsection (d) if each hemp-derived ingredient of the product: (1) has been tested in accordance with: (A) Subsections (b) and (c); or Subsection (d); and does not have a delta-9 tetrahydrocannabinol concentration of more than 0.3 percent."

146. THCA is non-intoxicating substance "...naturally occurring cannabinoid that is abundant in raw cannabis buds, and does not have psychoactive qualities when consumed in its unprocessed form. THCA is converted into a psychoactive THC chemical when heated, smoked, or

vaped." [180]

147.   Armstrong Lab states that "[t]he evaluation of the concentration of delta-9 THC in Cannabis-related products is based on the total delta-9 THC level, which is the sum of the delta-9 THC and THCA concentrations." [181]

148.   All of the items that were purchased by the officers that Armstrong Labs determined exceeded the 0.3 Delta-9 THC concentration were legal THCA products in their natural form when possessed by Khan:  Voodoo Exotics Mob Boss, Dream Black Mamba,  and Torch Sour Gorilla THCA Live Rosin.[182]   As such, at the time of purchase prior to testing, those products were legal and had Certificates of Analysis performed prior to distribution that were available to law enforcement to review.[183] It was only after application of the processes by Armstrong Lab and the inclusion of all THC together did the items (inappropriately) fall under illegal Delta-9.

149.   Defendants sought a search warrant after testing a product that did  not require further testing under Texas or Federal law, sought testing that changed the chemical structure of the products that rendered it illegal from

---

[180] https://www.hanleycenter.org/what-is-thca/
[181] https://aflab.com/totaldelta9thcisdelta9anddelta9thca/.
[182] See Exhibit "N," 7.14-7.19 and Exhibit "B," line 9.
[183] See Exhibit "B," line 9.

a lab that lumps all THC into a Delta-9 concentration, and baselessly sought a search warrant that was overbroad and vague to seize legal items.

150.   Indeed, officers did seize legal items: about sixty percent of that seizure by Defendants was Delta-8, about 25% THCA, and about 15% THCP and THCJD, all of which are legal under the current definitions expressed herein.[184] Defendants were unreasonable and the seizure of Plaintiff's property is not entitled to qualified immunity as they have violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure of his property and Plaintiff's seek only equitable relief.

151.   Khan did not possess an illegal substance at the time of any undercover purchases or the raid, and he had not formed the mens rea to possess contraband.  Plaintiff Khan had Certificates of Analysis for all sold items and items in his possession at the time of the raid.[185]

152.   Plaintiffs H.I.L.T. and Khan have been harmed by the removal of lawful inventory of approximately $10,000.00, their reputation impugned, and Khan's mental and physical health injured.[186] The stigma has already caused substantial harm to H.I.L.T. and its members, undermining the significant efforts and investments it has made to educate the public and

---

[184] See Exhibit "B," line 8.
[185] Exhibit "B," lines 8 - 9.
[186] See Exhibit "B," Line 8 and Exhibit "L," pp. 3¶2-4.

authorities about the legality and benefits of hemp production and sales, along with a resulting decrease in H.I.L.T. members' sales.[187]   Defendants acted in concert after the DEA's administrative subpoenas were quashed by this Court. What the DEA couldn't do, the Allen Police Department, under the direction of Chief Dye, did at the DEA's behest and with the same objective. Store raids and arrests commenced after Plaintiffs' attorneys successfully challenged their invalid and clearly overreaching subpoenas.

## REQUEST FOR SANCTIONS

153.   Plaintiffs ask that the DEA be sanctioned for its unlawful attempted use of subpoenas on private citizens and for its failure to respond to the Motion to Quash filed by Allen Hemp Coalition in No. 4:24-mc-00110-ALM, as this Court requested by way of the Court's Order dated July 24, 2024.

154.   Plaintiffs also ask that they be given attorney's fees for costs and expenses incurred in connection with defending against the DEA subpoenas.

## COUNT 6: FALSE ARREST

155.   Plaintiffs reiterate and adopt each and every one of the foregoing

---

[187] See Exhibit "A," p. 3 ¶2 - p. 4.

paragraphs, as if fully set forth herein.

156.   The intentional infliction of mental injury, verbal abuse, mental cruelty, the use of non-deadly force by Defendants UNKNOWN COLLINS COUNTY SHERIFF'S OFFICE DEPUTIES, UNKNOWN ALLEN POLICE OFFICERS, Defendant Chief Dye, The City of Allen, Unknown DEA Agents and the DEA when Defendants had no lawful authority to detain or arrest Khan, when Plaintiff Khan was unarmed and did not pose a threat of death or serious bodily injury to Defendants or others, was without justification or provocation, was excessive, and constitutes false arrest as it was without probable cause for which Defendants are individually liable.

157.   As a proximate result of the False Arrest committed by Defendants, Plaintiffs all have sustained monetary losses and Khan has sustained physical and emotional trauma from his false arrest. These injuries have caused and will continue to cause Plaintiffs great pain and suffering, both mental and physical.

158.   "A §1983 claim for false arrest and/or false imprisonment requires a plaintiff to demonstrate that he was arrested and/or detained without

probable cause in violation of the Fourth Amendment."[188]  "The Fourth Amendment prohibits government officials from detaining a person in the absence of probable cause."[189] If the complaint alleges "...a form of legal process resulted in pretrial detention unsupported by probable cause, then the right allegedly infringed lies in the Fourth Amendment."[190]  Khan's Fourth Amendment rights, along with his person, have been abused and violated.  Khan, a seventy year old man who is legally selling hemp products, was arrested and charged with a Second Degree Felony Manufacturing a Controlled Substance without probable cause.[191]

159. Sec. 121.001 of the Texas Agriculture code provides this DEFINITION. " In this chapter, "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."THCA is non-intoxicating substance "...naturally occurring cannabinoid that is abundant in raw cannabis buds, and does not have psychoactive qualities

---

[188] *Bey v. Delgado*, 2023 U.S. Dist. LEXIS 213219, *5-6 (W.D. Tex. March 2023) (citing *Manuel v. City of Joliet*, 580 U.S. 357, 367 (2017)).
[189] *Manuel v. City of Joliet*, 580 U.S. at 367.
[190] *Id*. at 367.
[191] See Exhibit "B," line 8.

when consumed in its unprocessed form. THCA is converted into a psychoactive THC chemical when heated, smoked, or vaped."[192]

160.   Armstrong Lab indicates "[t]he evaluation of the concentration of delta-9 THC in Cannabis-related products is based on the total delta-9 THC level, *which is the sum of the delta-9 THC and THCA* concentrations." [193]

161.   All of the items that were purchased by the officers that Armstrong Lab determined exceeded the 0.3 Delta-9 THC concentration were legal THCA products in their natural form when possessed by Khan:  Voodoo Exotics Mob Boss, Dream Black Mamba,  and Torch Sour Gorilla THCA Live Rosin.[194] As such, at the time of purchase and the raid prior to testing by law enforcement, those products were legal and all have Certificates of Analysis performed at the time of harvest or after having been manufactured that were available to law enforcement to review.[195] A person commits the offense of possession of a controlled substance if he knowingly or intentionally possesses a controlled substance.[196] It was only after application of the processes by Armstrong Lab and the inclusion of

---

[192] https://www.hanleycenter.org/what-is-thca/
[193] https://aflab.com/totaldelta9thcisdelta9anddelta9thca/.
[194] See Exhibit "N," 7.14-7.19 and Exhibit "B," line 9.
[195] See Exhibit "B," line 9.
[196] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115(a); *Thompson v. State*, 2018 Tex. App. LEXIS 8317, *4(Tex. App. - Eastland 2018).

all THC together did the items fall under illegal Delta-9.

162.   Khan did not knowingly or intentionally possess an illegal substance at the time of any undercover purchases or the raid, and he had not formed the mens rea to possess contraband.   Plaintiff Khan had Certificates of Analysis for all purchased items and items in his possession at the time of the raid.   Khan had no knowledge that any of the substances in his possession were illegal.[197]

163.   The ***Texas Health and Safety Code*** provides in Section 443.151 that a consumable hemp product, if tested before processing or after processing with a Delta-9 concentration of 0.3 or less by an accredited laboratory, may be sold for human consumption. Khan was in compliance with the Texas Health and Safety Code and without the appropriate mens rea, Khan was arrested without probable cause.

164.   Defendants are liable to Khan for violating his Fourth Amendment right against the unreasonable seizure of his person and charging him with Manufacturing a Controlled Substances when he was in possession of only legal products.

165.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

---

[197] Exhibit "B," lines 8 - 9.

i.   Return of all seized inventory;

ii.   Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

iii.   Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances;

iv.   Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

v.   All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the

THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi. Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii. That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii. That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges

to allow an administrative investigation to be conducted.

ix.  Plaintiffs seek attorney's fees.


## COUNT 7: REGULATORY TAKING

166.   Plaintiffs reiterate and adopt each and every one of the foregoing paragraphs, as if fully set forth herein.

167.   The enforcement actions of the Defendants against the Plaintiffs are without statutory support or authority at the state or federal level. In fact, the Defendants' actions are in direct contravention of state and federal law.

168.   The actions of Defendants constitute a regulatory taking as it effectively creates a total ban of a class of products which are legal in the State of Texas and under federal law.

169.   The actions of the Defendants have served to preempt federal law and infringe on Plaintiffs' constitutional rights to amount to a regulatory taking under the Constitution of the United States and is therefore actionable under 42 U.S.C. § 1983.

170.   In Article VI of Constitution, the clause provides that "...the laws of the United States shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."[198] Generally, Preemption can

---

[198] U.S. CONST. art. VI, cl. 2.

occur in the following manners: by clear and 'direct' statements by Congress, via 'an implication' in federal law, or ' by an actual conflict between state and federal law, such as occurs when it is impossible for a private party to comply with both federal and state law requirements."[199]

171.   "The [Supreme] Court has found pre-emption where it is impossible for a private party to comply with both state and federal requirements,[200] or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."[201]

172.   "A state cannot evade the [2018] Farm Laws express preemption of laws prohibiting the interstate transportation of industrial hemp by criminalizing its possession and delivery…[and on] remand, the district court should evaluate whether Indiana's law violates the express preemption clause of the Farm Bill while keeping in mind the extent to which the Law reserves to the states the authority to regulate the production of industrial hemp."[202] In *Bio Gen., LLC v. Sanders*,[203] the Court references committee notes in their report on the 2018 Farm bill: "'[t]he Conference Report for the 2018 Farm Bill states that, "[w]hile states and Indian

---

[199] *Fifth Third Bank v. CSX Corp.*, 415 F.3d 741, 745-46 (7th Cir.2005).
[200] See, e. g., *Florida Lime & Avocado Growers, Inc. v. Paul*, 373 U.S. 132, 142-143 (1963).
[201] *English v. General Elec. Co.*, 496 U.S. 72, 79 (1990) (citing *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)).
[202] *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3dd 541 (7th Cir. 2020).
[203] 690 F.3dd at 936.

tribes may limit the production and sale of hemp and hemp products within their borders, . . . such states and Indian tribes [are not permitted] to limit the transportation or shipment of hemp or hemp products through the state or Indian territory."   Additionally, the Conference Report explains that "state and Tribal governments are authorized to put more restrictive parameters on the production of hemp but are not authorized to alter the definition of hemp or put in place policies that are less restrictive."

173.   Hemp and hemp-derived products no more than 0.3% Delta-9 THC products are legal, which Defendants seized. The Maldonado Court found that the business owner's property rights were irreparably harmed wherein *legal* products were made illegal and seized by law enforcement.[204]   Commercial establishments have constitutional rights as well.[205]

174.   Plaintiffs have made a substantial investment in their businesses, heavily relying on the fact that the products comprising their inventory are legal under Texas and federal law. Plaintiffs' products are still legal in Texas and under federal law, the Defendants' impermissible and illegal enforcement actions notwithstanding.

175.   The illegal police action of the Defendants infringes upon the

---

[204] See generally, *City of Corpus Christi v. Maldonado*, 398 S.W.3d 266 (Tex. App.- Corpus Christi 2011).
[205]   *Jabary v. City of Alle*n, 547 Fed. at 606.

investment-backed expectations and industry in which Plaintiffs and many others have built their livelihoods. For this same reason, the impermissible enforcement actions that are the basis of this suit, amounts to a deprivation of all, or substantially all, beneficial economic use of Plaintiffs' property.

176.   For all of these reasons and the substantial infringement upon Plaintiffs' business interests, the actions of the Defendants have caused grievous injury to Plaintiffs and their businesses.  Defendants have taken Plaintiffs' property without just compensation in violation of Due Process Clause of the Fifth Amendment and the Supremacy Clause of the United States Constitution.

177.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

i.      Return of all seized inventory;

ii.     Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

iii.    Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are

non-synthetic, naturally occurring, legal substances;

iv.    Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

v.    All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi.    Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.    That law enforcement be enjoined from seeking only Gas

Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.   That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.   Plaintiffs seek attorney's fees.

178.   The enforcement actions of the Defendants against the Plaintiffs are without statutory support or authority at the state or federal level. In fact, the Defendants' actions are in direct contravention of state and federal law.

## *COUNT 8:  DUE PROCESS VIOLATIONS*

179.   Defendants have violated the Due Process rights of the Plaintiffs under the Fifth Amendment.

180.   The Fifth Amendment provides that "No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or

indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

181.   The Fourteenth Amendment provides "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

182.   Under the Fifth and Fourteenth Amendments, Plaintiffs have been "...deprived of life, liberty, or property, without due process of law" by Defendants.

183.   H.B. 1325 established a hemp program in Texas and delegated regulatory authority over consumable hemp products to the Texas Department of State Health Services (hereinafter, "DSHS").   H.B. 1325 also formalized by law what DSHS did in the interim – it defined hemp in Texas the same as it was defined federally and removed hemp and THCs in hemp from the definition of "controlled

substances" under the Texas Controlled Substances Act, Chapter 481 of the Texas Health & Safety Code.  From that point, only Delta-9 products with greater than 0.3 percent delta-9 THC were covered by Texas Health and Safety Code §481.103 Penalty Group 2. This definition does not address tetrahydrocannabinol acids (THCA) specifically; thereby, any THCA would be legal as long as its Delta-9 content is 0.3 or below THC content.

184.   The Texas Department of State Health Services (DSHS) promulgated rules for the manufacture, distribution, and retail sale of consumable hemp products that were adopted and published on August 2, 2020, including licensure.[206] This Administrative Code Section lists an acceptable, otherwise legal, level of tetrahydrocannabinol (hereafter "THC") content concentration on dry weight basis to be 0.3 percent or less for Delta-9 THC.

185.   DSHS provides for further rules regarding testing prior to distribution or sale:   Title 25 Texas Admin. Code Rule § 300.01 Testing Required.

186.   DSHS has a process in place to handle testing after harvesting and  THC limit overages in Texas Admin. Code Rule § 300.303.

187.   Texas Admin. Rule 300.604 governs destruction, Section (a):  "The ***department shall request court-ordered destruction*** of a  sampled, detained, or

---

[206] See Exhibit "J," a true and correct copy of Texas Administrative Code, Title 25, Chapter 300, Subchapter A, Section 300.101, incorporated herein by reference.

embargoed consumable hemp product if the court finds the article is misbranded or adulterated."

188.   The Texas Department of State Health State Services has detailed instructions for situations when a seller, distributor or manufacturer is in possession of a product that tests above 0.3:  the Department itself seeks a court order for destruction of the product.

189.   Defendants should have followed these Administrative Rules, notifying the Texas Department of State Health Services that a Hemp Seller's product tested above 0.3 percent concentration of Delta-9 when lab results were received from Armstrong Lab, nor did Armstrong Lab notify DSHS.

190.   Instead, Defendants pursued a vague, overbroad and unconstitutional search warrant to seize legal products and arrest a seventy year old man for Manufacture / Delivery of a Controlled Substance for a product that was entirely legal while in his possession.  Defendants violated Plaintiffs due process rights in failing to follow established rules codified by the Texas Department of State Health Services.

191.   In *Johnson v. City of Monroe*,[207] the Court determined a two step inquiry must be done when due process violations are implicated.  "First, we determine whether the state has deprived a person of a liberty or

_____

[207] 2024 U.S. App. LEXIS 22369, *10 (5th Cir. 2024).

property interest." [208] If so, "we must determine whether the procedures relative to that deprivation were constitutionally sufficient.'"[209] Plaintiff Khan has been deprived of property, and Khan has also been deprived of liberty.

192.   Defendants failed to follow procedures relative to depriving Plaintiffs of both liberty and property by failing to seek the appropriate testing for the products purchased that would not change the chemical structure of the product, rendering it illegal after the testing was complete.

193.   Defendants failed to follow Texas Department of State Health Services procedures relative to depriving Plaintiffs of property.  Defendants failed to notify DSHS, provide documentary evidence to DSHS, turn over products to DSHS, or allow DSHS to proceed according to statute. Texas Administrative Code, Title 25, Chapter 300, Subchapter A.

194.   Further, Gas nor Liquid Chromatography will protect the integrity and chemical structure of the THCA *as tested by Armstrong*, even though the chemical protection process is available to the lab.[210]  This failure to protect the integrity of the law enforcement submission and to conduct a process

---

[208] *Id.*

[209] *Id*. citing *Welch v. Thompson*, 20 F.3d 636, 639 (5th Cir. 1994).

[210] *Exhibit P ¶ 5.*

of examining evidence for a criminal case in such a manner is tantamount to evidence tampering, knowing destruction of evidence in a pending criminal investigation, failure in the chain of custody of said evidence, and the violation of Plaintiff Khan's Due Process constitutional rights. Chemical protection of the THCA within a product is entirely possible and within the bounds of appropriate testing protocols in hemp testing.[211]

195.   In an analysis as to whether the destruction of evidence violates a defendant's Due Process rights, "...evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." [212] Armstrong Lab is abundantly clear in its website and in any questioning (even via email) that all THCA testing results in a conversion of the THCA into a sum total of THCA and Delta. They claim they don't have a duty to do otherwise and this works to law enforcement's benefit but to the detriment of Plaintiffs' Due Process rights.   It is apparent that any testing by Armstrong Lab with their processes that do not protect the THCA from the Delta-9 calculation leads to the destruction of exculpatory evidence.

---

[211] Exhibit "P,", ¶¶ 5-7.
[212] *California v. Trombetta,* 467 U.S. 479, 489(1984).

196.   Neither Liquid or Gas Chromatography will maintain the integrity of the THCA to determine what, if anything, a suspect, defendant, or, in this case, Plaintiff Khan, *was in possession of* at the time of possession.  Khan can no longer prove his innocence and cannot obtain comparable evidence by other reasonably available means as *the evidence is no longer available*.

197.   Defendants have violated Plaintiff Khan's Due Process Rights in taking their liberty and property without following proper procedures and Plaintiffs have been harmed thereby.

198.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

   i.      Return of all seized inventory;

   ii.     Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

   iii.    Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances;

iv.     Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

v.      All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi.     Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.    That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or

other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.    That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.    Plaintiffs seek attorney's fees.

## COUNT 9:  BREACH OF WARRANTY

199.    Plaintiffs reiterate and adopt each and every one of the foregoing paragraphs, as if fully set forth herein.

200.    "The failure to warn of a danger cannot always be excused by the mere fact that the potentially endangered users are few in number. Furthermore, some products, though manufactured as designed and intended, are so dangerous in fact that the manufacturer should be liable for resulting harm though he did not and could not have known of the danger at the time of

marketing." [213]

201.   "The elements of a claim for breach of implied warranty are: (1) the

existence of the warranty; (2) a breach of that warranty; (3) proximate

cause; and (4) damages." [214]

202.   The Texas Business and Commerce code provides that:

"(a) Express warranties by the seller are created as follows:

   **(1)** Any affirmation of fact or promise made by the seller to the buyer which
relates to the goods and becomes part of the basis of the bargain creates an
express warranty that the goods shall conform to the affirmation or promise.
   **(2)** Any description of the goods which is made part of the basis of the
bargain creates an express warranty that the goods shall conform to the
description.
   **(3)** Any sample or model which is made part of the basis of the bargain
creates an express warranty that the whole of the goods shall conform to the
sample or model.
                (b) It is not necessary to the creation of an express warranty that
                the seller use formal words such as "warrant" or "guarantee" or
                that he have a specific intention to make a warranty, but an
                affirmation merely of the value of the goods or a statement
                purporting to be merely the seller's opinion or commendation of
                the goods does not create a warranty." [215]


203.   Defendants NSI, Pharmlabs, and Higher Testing have provided

---

[213] *Crocker v. Winthrop Laboratories, Div. of Sterling Drug, Inc.,* 514 S.W.2d 429, 432(1974).
[214] *Barnett v. Eaz-Lift Spring Co.,* 2005 U.S. Dist. LEXIS 47818, *15(E.D. Tex. 2005) (citing
*Hyundai Motor Co. v. Rodriguez,* 995 S.W.2d 661, 667-68 (Tex. 1999)).
[215]    Tex. Bus. & Com. Code § 20.313.

Certificates of Analysis for Hemp products and all had the specific intention to provide a warranty as to the testing results. Defendants NSI, Pharmlabs, and Higher Testing have breached that warranty due to Plaintiff. Plaintiff Khan relied upon the representations made by Defendants NSI, Pharmlabs, and Higher Testing websites and the testing provided in Certificates of Analysis for Plaintiff's Hemp products, and as a result, Plaintiffs were harmed when the business was raided, searched and items seized without probable cause and Plaintiff Khan was arrested.

204.   Defendant Higher Testing performed the testing for the Certificate of Analysis for the product Black Mamba that was purchased by the undercover officer from Khan on 7/10/24.[216] Higher Testing determined that the Delta-9 concentration was LOQ, which is the smallest amount or the lowest concentration of a substance that could be located.[217] Yet, Armstrong Lab determined that the Black Mamba was a total Delta-9 concentration of 7.19 percent.[218]

205.   Higher Testing states: "Higher Testing knows the investment that their

---

[216] Exhibit "M," p. 6, Exhibit "N," ¶¶ 7.14, 7.15, Exhibit "P," ¶15.
[217] Exhibit B pg. 6
[218] Exhibit L ¶ 7.15.

clients make in their cannabis products and it is very important for us to protect that investment and their future by **offering fast, accurate results.** Customer Service at Higher Testing will be second to none and we will stand by our vision to protect our clients and their futures."[219] Higher Testing provides a clear warranty of services.

206.   Plaintiff Khan relied upon Defendant HIgher Testing's affirmation in the Certificate of Analysis Lab Report that the Delta-9 concentration was less than 0.01 percent, or the smallest amount that could be detected (obviously less than 0.3) and was harmed as a result.

207.   Defendant Pharmlabs tested the Torch Sour Gorilla and issued the Certificate of Analysis for the product purchased by law enforcement on 8/14/2024.[220]   The total Delta-9 in Pharmlab's CoA is less than 0.3 percent concentration in the Sour Gorilla.[221]   Armstrong Lab found the same product to have a total Delta-9 concentration of 1.88 percent.[222] Holmes found the results to be questionable based upon her training and

---

[219] https://www.highertesting.com/
[220] Exhibit "D," pp. 7-9, Exhibit L¶¶ 7.18-7.19.
[221] Exhibit "D," p. 7.
[222] Exhibit "L," ¶ 7.19.

experience.[223]

208.   The first words on Pharmlabs website are: "**HONEST, ACCURATE, AFFORDABLE & FAST LABORATORY TESTING AND ANALYSIS."[224]** Pharmlabs goes on to state "[a]ccuracy is everything to us, and we work diligently to continuously verify all processes and results before they ever reach you."[225]

209.   Plaintiff Khan relied upon Defendant Pharmlab's affirmation in the Certificate of Analysis Lab Report that the Delta-9 concentration was less than 0.01 percent and was harmed as a result.

210.   Defendant NSI is owner of the lab Food & Environment Safety Analytical Lab that produced the result for Mob Boss for the CoA, which was purchased twice by law enforcement from Plaintiff Khan on 7/10/24 and 8/14/24.[226] The warrant indicates that each package indicated 'flower' and a 41% THC.[227]   Khan has provided the Certificate of Analysis for the batch of Mob Boss products purchased by law enforcement indicating the

---

[223] Exhibit "P,P ¶11.
[224] https://lobby.pharmlabscannabistesting.com/
[225] https://lobby.pharmlabscannabistesting.com/#
[226] See Exhibit "N," ¶¶ 7.14 and 7.18.
[227] *Id.*

Delta-9 content is less than 0.01 percent, a clearly legal amount.[228] Armstrong Lab informed law enforcement, per the warrant, that the first purchase on 7/10/24 had a "total Delta-9 THC concentration of 26.8%."[229] The second purchase of Mob Boss on 8/14/24 ***from the same batch as the first purchase*** returned a "...a total Delta-9 concentration…to be 17.5%."[230]  The CoA from Food Environment Safety Analytical Lab for the Mob Boss flower contained a mathematical miscalculation of total THC.[231]  The formula Total THC= THCA*0.877+d9THC+d8THC to determine total THC was not used accurately.[232] The CoA reported a total THC content of 26.37% when in fact it should have been reported as 36.80%.[233]

211.   NSI's Food & Environment Safety Analytical Lab announces on it's website:

"*Visions: Adhere to the highest industry standards of testing methods. Support demanding testing needs for a clean and safe environment.*

---

[228] Exhibit "M," p. 5.
[229] Exhibit "N," ¶¶ 7.14 and 7.15.
[230] *Id*. at 7.18 and 7.19.
[231] Exhibit "P," ¶12
[232] *Id.*
[233] *Id.*

*Provide customers with quality research and development collaboration.*

*Advance in novel efficient testing methods."* [234]

212.   Plaintiff Khan relied upon Defendant NSI's affirmation in the Certificate of Analysis Lab Report that the Delta-9 concentration was less than 0.01 percent and was harmed as a result.

213.   Plaintiffs seek damages in the amount of one million dollars and attorney's fees and costs from Defendants.

### COUNT 10:  COMMON LAW FRAUD

214.   "Under Texas law, the elements of common-law fraud are: (1) a material misrepresentation, (2) which was false, and (3) which was either known to be false when made or was asserted without knowledge of the truth, (4) which was intended to be acted upon, (5) which was relied upon, and (6) which caused injury." [235]

215.   Defendants NSI, Pharmlabs, and Higher Testing each made a material misrepresentation that their testing could be relied upon in their websites and that the Hemp Product tested had concentrations of .3% or less of

---

[234] *https://fesalabs.com/#aboutus*
[235] *Ibe v. Jones,* 836 F.3dd 516, 525(5th Cir. 2016) (citing *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990)).

Delta-9 in each of their CoAs for the products purchased by law enforcement. [236]

216.   Defendants NSI, Pharmlabs, and Higher Testing issued Certificates of Analysis that the Hemp Product tested had concentrations of 0.3 or less percents of Delta-9 that Plaintiff relied upon for each product purchased by law enforcement and NSI, Pharmlabs, and Higher Testing represent in their websites that their testing may be relied upon. [237]

217.   Defendant Higher Testing affirms in its website that its testing is accurate.  It performed the testing for the Certificate of Analysis for the product Blacb Mamba that was purchased by the undercover officer from Khan on 7/10/24.[238] Higher Testing determined that the Delta-9 concentration was LOQ, which is the smallest amount or the lowest concentration of a substance that could be located.[239] Yet, Armstrong Lab determined that the Blacb Mamba was a total Delta-9 concentration of 7.19 percent.[240] Plaintiff Khan relied upon Defendant Higher Testing's

---

[236]  See Exhibit "B," pp. 4-9.
[237]  See Exhibit "B," pp. 4-9.
[238] Exhibit "B," p. 6, Exhibit "N," ¶¶ 7.14, 7.15.
[239] Exhibit "B," p. 6
[240] Exhibit "N," ¶ 7.15.

affirmation in the Certificate of Analysis Lab Report that the Delta-9 concentration was less than 0.01 percent, or the smallest amount that could be detected (obviously less than 0.3) and was harmed as a result.

218.   Defendant Pharmlabs affirms in its website that its testing is accurate. It tested the Torch Sour Gorilla and issued the Certificate of Analysis for the product purchased by law enforcement on 8/14/2024.[241]   The total Delta-9 in Pharmlab's CoA is less than 0.3 percent concentration in the Sour Gorilla.[242]   Armstrong Lab found the same product to have a total Delta-9 concentration of 1.88 percent.[243]   Plaintiff Khan relied upon Defendant Pharmlab's affirmation in the Certificate of Analysis Lab Report that the Delta-9 concentration was less than 0.01 percent and was harmed as a result.

219.   Defendant NSI is owner of the lab Food & Environment Safety Analytical Lab, which affirms in its website that its testing is accurate.  It produced the result for Mob Boss for the CoA, which was purchased twice by law enforcement from Plaintiff Khan on 7/10/24 and 8/14/24.[244]

---

[241] Exhibit "B," pp. 7-9, Exhibit "N," ¶¶ 7.18-7.19.
[242] Exhibit "B," p. 7
[243] Exhibit "N," ¶ 7.19.
[244] See Exhibit "N," ¶¶ 7.14 and 7.18.

The warrant indicates that each package indicated 'flower' and a 41% THC.[245]  Khan has provided the Certificate of Analysis for the batch of Mob Boss products purchased by law enforcement indicating the Delta-9 content is less than 0.01 percent, a clearly legal amount.[246]  Armstrong Lab informed law enforcement, per the warrant, that the first purchase on 7/10/24 had a "total Delta-9 THC concentration of 26.8%."[247]  The second purchase of Mob Boss on 8/14/24 *from the same batch as the first purchase* returned a "...a total Delta-9 concentration...to be 17.5%."[248] The CoA from Food Environment Safety Analytical Lab for the Mob Boss flower contained a mathematical miscalculation of total THC.[249] The formula Total THC= THCA*0.877+d9THC+d8THC to determine total THC was not used accurately.[250] The CoA reported a total THC content of 26.37% when in fact it should have been reported as 36.80%.[251] Plaintiff Khan relied upon Defendant NSI's affirmation in the Certificate of Analysis Lab Report that the Delta-9 concentration was less than 0.01

---

[245] *Id.*
[246] Exhibit "B," p. 5.
[247] Exhibit "N," ¶¶ 7.14 and 7.15.
[248] *Id*. at 7.18 and 7.19.
[249] Exhibit "P," ¶12
[250] *Id.*
[251] *Id.*

percent and was harmed as a result.

220.   Defendants NSI, Pharmlabs, and Higher Testing intended for Plaintiffs to rely upon its misrepresentations, thereby causing Plaintiffs' injuries, asserted information that the Delta-9 concentration in each batch of the product was less than 0.3, which was either known to be false when made or was asserted without knowledge of the truth, which was intended to be acted upon by manufacturers, distributors, or sellers of hemp such as Plaintiffs.  Plaintiffs were harmed as a result.

221.   Plaintiffs seek damages in the amount of one million dollars and attorney's fees and costs from Defendants.

### *NO CONTRIBUTORY NEGLIGENCE OR COMPARATIVE FAULT*

222.   Plaintiffs would next show that nothing Plaintiffs did or failed to do in any way contributed to the occurrence that made the basis of this lawsuit. Plaintiffs were in full compliance with the Texas Administrative Code, Texas Health and Safety Code, the Federal and State Hemp Farm Bills, and Texas Department of State Health Services Hemp statutory rules.  Therefore, Plaintiffs were and are free from any comparative fault or contributory negligence as a result of the occurrences that made the basis of this lawsuit.

## **PLAINTIFFS SEEK ONLY EQUITABLE RELIEF**

223.  As Plaintiffs seek only Equitable Relief, Defendants do not have Qualified Immunity.

224.  "The doctrine of qualified immunity does not apply to claims for equitable relief."[252] In *Hefley v. Redington*,[253] the Court denied Defendants' Motion to Dismiss for qualified immunity.  The *Hefley* Court noted that the Eleventh Amendment bars a litigant from pursuing monetary damages against the State, and the State's officials are protected with immunity; however, the Amendment does not bar '…injunctive relief against state officials." [254] In *Hefley*, the Plaintiffs were allowed to pursue purely equitable relief. [255]

225.  "Qualified immunity is only an immunity from a suit for money damages and does not provide immunity from a suit seeking declaratory or injunctive relief."[256] "A state and its officers are not entitled to Eleventh Amendment protection, however, where Plaintiffs seek only prospective, injunctive relief." [257] The same is true for awards of costs and attorneys'

---

[252] *Denius v. Dunlap*, 209 F.3d at 959; see also, *Burgess v. Lowery,* 201 F.3d 942 30073, *1 (7th Cir. 2000)).
[253] 2023 U.S. Dist. LEXIS 44398, *6 (E.D. Mich. 2023).
[254] *Id.* at 6.
[255] *Id.*
[256] *Hydrick v. Hunter*, 669 F.3d 937, 939-940 (9th Cir. 2012).
[257] See *Gray v. Laws*, 51 F.3d 426, 430 n.1 (4th Cir. 1995); *see Edelman*, 415 U.S. at 664-68.

fees made pursuant to 42 U.S.C. § 1988."[258]

226.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

    i.    Return of all seized inventory;

    ii.    Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

    iii.    Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances; and

    iv.    Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

    v.    All testing performed on post-harvested hemp and packaged

---

[258] *Mainstream Loudoun v. Board of Trustees of the Loudoun County Library*, 2 F. Supp. 2d 783, 790 (E.D. Va. 1998).

hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi.     Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.    That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.   That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas

Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.    Plaintiffs seek attorney's fees

## DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY

227.   Plaintiffs reiterate and adopt each and every one of the foregoing paragraphs, as if fully set forth herein.

228.   The United States Supreme Court in *Mullenix v. Luna*,[259] noted that "[t]he doctrine of qualified immunity shields officials from civil liability so long as their conduct "'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" [260]

229.   "A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'"[261] It is not reasonable for a trained officer to believe the law has been violated when indeed it has not.[262] All the officer Defendants who participated or supervised, including Defendant Chief Dye, were aware and disregarded the law or were grossly

---

[259] 577 U.S. 7, 11 (2015).
[260] See *Pearson* v. *Callahan*, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009) (quoting *Harlow* v. *Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982)).
[261] *Id.* at 11 (quoting *Reichle* v. *Howards*, 566 U.S. 658, 664, 132 S. Ct. 2088, 182 L. Ed. 2d 985, 989 (2012)).
[262] See *Harris County Precinct Four Constable Dep't v Grabowski,* 922 S.W.2d 954 (Tex.1996).

and negligently mistaken as to the law regarding hemp, Delta-8, Delta-9 and THC concentrations.

230.   "Although an officer's mistake of fact can still justify a probable cause or reasonable suspicion determination for a traffic stop, an officer's mistake of law cannot."[263]  In *United States v. Lopez-Soto*,[264] the Court found the stop and search based upon the officer's mistaken belief of the law to be a violation of the Fourth Amendment.

231.  Whether an officer is entitled to qualified immunity is a two-step analysis:  is there a constitutional right that has been violated and was that right clearly established at the time of the violation.[265]  Plaintiffs have a constitutional right to be free from illegal searches and seizures and this constitutional right is well established. The enforcement actions of the Defendants against Plaintiffs are without statutory support or authority at the state or federal level. In fact, the Defendants actions are in direct contravention of state and federal law. The warrant authorizes seizure of Tetrahydrocannabinols or THC; however, the Texas Health and Safety Code exempts *"hemp, as defined by Section 121.001, Agriculture Code, or the tetrahydrocannabinols in hemp*." [266] Consequently, the warrant is overbroad as it

---

[263] *United States v. Nicholson*, 721 F.3dd 1236, 1238 (10ᵗʰ Cir. 2013) (citing *United States v.Tibbetts,* 396 F.3dd 1132, 1138 (10th Cir. 2005)).
[264] 205 F.3d 1101, 1114 (9ᵗʰ Cir. 2000).
[265]  See *Denius v. Dunlap*, 209 F.3d 944 (7ᵗʰ Cir. 2000).
[266] Tex. Health & Safety Code, Sec. 481.002(5)(Emphasis added).

seeks to seize substances specifically exempted from the Code.

232. Sec. 121.001 of the Texas Agriculture code provides this DEFINITION. " In this chapter, "hemp" means the plant Cannabis sativa L. and any part of that plant, including the seeds of the plant and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis."

233. The warrant should have included language to seize any "Tetrahydrocannabinols exceeding 0.3 percent Delta-9 concentrations" or those trafficking activities associated with "Tetrahydrocannabinols exceeding 0.3 percent Delta-9 concentrations."

234. Texas Health and Safety Code 443.151 provides as long as the hemp is tested prior to manufacture or processing, "e) A consumable hemp product is not required to be tested under Subsection (d) if each hemp-derived ingredient of the product: (1) has been tested in accordance with: (A) Subsections (b) and (c); or Subsection (d); and does not have a delta-9 tetrahydrocannabinol concentration of more than 0.3 percent."

235. THCA is non-intoxicating substance "...naturally occurring cannabinoid that is abundant in raw cannabis buds, and does not have psychoactive qualities when consumed in its unprocessed form. THCA is converted into a

psychoactive THC chemical when heated, smoked, or vaped." [267]

236.   The Lab makes "[t]he evaluation of the concentration of delta-9 THC in Cannabis-related products is based on the total delta-9 THC level, which is the sum of the delta-9 THC and THCA concentrations." [268]

237.   All of the items that were purchased by the officers that s determined exceeded the 0.3 Delta-9 THC concentration were legal THCA products in their natural form when possessed by Khan:  Voodoo Exotics Mob Boss, Dream Black Mamba,  and Torch Sour Gorilla THCA Live Rosin.[269]  As such, at the time of purchase prior to testing, those products were legal and have Certificates of Analysis performed at the time of harvest that were available to law enforcement to review. [270]

238.   It was only after application of the processes by s and the inclusion of all THC together did the items fall under illegal Delta-9.

239.   Defendants sought a search warrant after testing a product that did  not require further testing under Texas or Federal law, sought testing that changed the chemical structure of the products that rendered it illegal from a lab that lumps all THC into a Delta-9 concentration, and baselessly sought a search warrant that was

---

[267] https://www.hanleycenter.org/what-is-thca/
[268] https://aflab.com/totaldelta9thcisdelta9anddelta9thca/.
[269] See Exhibit "N," 7.14-7.19 and Exhibit "B," line 9.
[270] See Exhibit "B," line 9.

overbroad and vague that allowed Defendants to seize legal items.

240.   Indeed, officers did seize legal items: about sixty percent of that seizure by Defendants was Delta-8, about 25% THCA, and about 15% THCP and THCJD, all of which are legal under the current definitions expressed herein.[271] Defendants were unreasonable and the seizure of Plaintiffs' property is not entitled to qualified immunity as they have violated Plaintiffs' Fourth Amendment right to be free from unreasonable seizure of his property.

241.   The Court in *Bellatoni v. Lamont*,[272] emphasized that "[t]o be clear, an official loses qualified immunity only for violating clearly established law,"[273] and "'in the light of pre-existing law,' the unlawfulness of the officer's conduct ''must be apparent.'" [274]

242.   Plaintiff asserts that Defendant Chief Dye, fully and completely controlled the execution of the *Fourth Amendment* violations detailed herein while being the person who would be said to represent the official policy of the City of Allen.

243.   "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers *or by those whose edicts or acts may fairly be said*

---

[271] See Exhibit "B," line 8.
[272] 671 F. Supp. 140, 146.
[273] *Ziglar v. Abbasi*, 582 U.S. 120, 151, 137 S. Ct. 1843, 198 L. Ed. 2d 290 (2017).
[274] (quoting *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S. Ct. 3034, 97 L. Ed. 2d 523 (1987)).

*to represent official policy,* inflicts the injury that the government as an entity is responsible under § 1983."[275]   Defendant Dye is in control and his edicts regarding THC are evident in his letter in September 2024.[276]   Dye goes so far as to threaten the business' Certificate of Occupancy, illustrating his agenda to run the legal businesses out of town. [277]

244.   At all relevant times, The Allen Police Department has been directed by Defendant Chief Dye, and he and unknown officer Defendants should have ensured with training and supervision that officers were acting within the law (now five years since its inception) and without:

      i.  the use of objectively unreasonable and inaccurate information;

      ii.  search and seizure of persons and property without probable cause or without legal basis, such as a properly written warrant as required by law;

      iii.  the use of outdated, unreliable THC Presumptive Field Tests; and

      iv.  misunderstanding the law, regardless of complexity.

245.   Five years after the governor signed the Texas' Farm Bill, officers still fail to be properly supervised and trained as to the legality of Delta 8 and Delta-9

---

[275] *Monell v. Dept. of Soc. Serv.'s of City of New York*, 436 U.S. 658, 2038 (1978) (Emphasis added).
[276] See Exhibit "I."
[277] See Exhibit "I," p. 2.

119

THC concentrations at .3% or less.  The above-described "edicts and acts" of policy, custom, or practice were the direct, proximate cause of Defendant City of Allen, Defendants Chief Dye, along with unknown officer Defendant, violating Plaintiff's Fourth and Fourteenth Amendment rights, enforceable through 42 U.S.C. 1983. Clearly:

    i.   The City failed to provide appropriate training regarding the laws on THC as Defendant Chief Dye failed to supervise or train the subordinate officers and was deliberately indifferent in adopting a supervision or training policy regarding search warrants and the legality of THC products and hemp;

    ii.   The City of Allen continued to endorse, purchase and execute search warrants based upon an outdated, unreliable legal information as to THC; and

    iii.   The inadequate training policy directly caused injury to Plaintiff.[278]

246.  "Although supervisory officials cannot be held liable solely on the basis of their employer employee relationship with a tortfeasor, they may be liable when their own action or inaction, including a failure to supervise that amounts to gross negligence or deliberate indifference, is a proximate cause of the constitutional

---

[278] See *Hinshaw v. Doffer*, 785 F.2d 1260 (5th Cir. 1986).

violation."[279] Chief Dye and others,  as supervisors and representatives of the City, are clearly a 'moving force' for *Monell* liability analysis.[280]  Defendants Chief Dye and unknown officer Defendants have a duty to supervise and are 'responsible' for the acts of officers under the Texas Local Government Code. [281]

247.   Defendant Dye, the Chief and director of policy regarding THC for the Allen Police Department, is obviously intimately involved in the matters at hand and State officers are working as his direction. [282]

248.   Officers have a "…duty to be familiar with the law and with responsibilities of self and other public officials.  The law enforcement officer shall assiduously apply himself to the study of the principles of the law which he is sworn to uphold.  He will make certain of his responsibilities in the *particulars* of their enforcement, seeking aid from his superiors in matters of technicality or principle when these are not clear to him…" [283]

249.   The actions of Defendants rise to the level of gross negligence or deliberate indifference.  These actions are not isolated events but a pattern of continuous and ongoing movements and operations from May 2024 through

---

[279] *Id.* at 1263 (citations omitted).
[280] *Monell*, 436 U.S. at 694.
[281] Tex. Loc. Gov't Code, Title 3, Subchapter B, Subtitle 85, Section 85.003.
[282]  See Exhibit "I."
[283]  See Texas Admin. Code, Title 37, Part 1, Subchapter H, Rule §1.113 International Association of Chiefs of Police Canons of Police Ethics (*Emphasis Added*).

September 2024 by DEA agents, the City of Allen, and the Allen Police Department with Chief Dye directing activities. [284]

250.   Defendants continue to knowingly utilize unreliable scientific methods like the Gas Chromatography and overbroad, vague search warrants for THC seizures. The entire basis for probable cause in this warrant presented to an unsuspecting magistrate was derived from inadequate understanding of the law.

251.   Further, the unknown officers and Defendants should have known, based on recognized state law, that the products being seized were legal under Texas and federal law at the time they assisted in executing the search and seizure of Plaintiff's property.

252.   Plaintiffs have a constitutional right to be free from illegal searches and seizures and this constitutional right is well established. The enforcement actions of the Defendants against Plaintiff are without statutory support or authority at the state or federal level. In fact, the Defendants actions are in direct contravention of state and federal law.

253.   Defendants were unreasonable in the seizure of Plaintiffs' inventory and are not entitled to qualified immunity as they have violated Plaintiff's Fourth Amendment right to be free from unreasonable seizure of his property.  It is not reasonable for a trained officer to believe the law has been violated when indeed it

---

[284] See Exhibits "C" through "I."

has not.[285]   All the officer Defendants who participated or supervised, including the Chief, were aware and disregarded the law or were mistaken as to the law regarding hemp, Delta-8, Delta-9 and THC concentrations.

254.   A reasonable person would have known and understood the law regarding hemp and Tetrahydrocannabinol or would have taken steps to gain a correct legal understanding of the naturally occurring substances.

255.   "Although an officer's mistake of fact can still justify a probable cause or reasonable suspicion determination for a traffic stop, an officer's mistake of law cannot."[286]   In *United States v. Lopez-Soto*,[287] the Court found the stop and search based upon the officer's mistaken belief of the law to be a violation of the Fourth Amendment.

256.   Further, the unknown officers and Defendants should have known, based on recognized state law, that the products being seized were legal under Texas and federal law at the time they assisted in executing the search and seizure of Plaintiffs' property.

257.   Defendants have violated Plaintiffs' constitutional rights under the Fourth and Fifth Amendments; clearly established rights that a reasonable officer

---

[285] See *Harris County Precinct Four Constable Dep't v Grabowski,* 922 S.W.2d 954 (Tex. 1996).
[286] *United States v. Nicholson*, 721 F.3d 1236, 1238 (10th Cir. 2013) (citing *United States v.Tibbetts*, 396 F.3d 1132, 1138 (10th Cir. 2005)).
[287] 205 F.3d 1101, 1114 (9th Cir. 2000).

should have known.

258.   Defendants do not have qualified immunity.

259.   Further, the doctrine of Qualified Immunity is not applicable wherein Plaintiffs seek only Equitable Relief.

260.   "The doctrine of qualified immunity does not apply to claims for equitable relief."[288] In *Hefley v. Redington*, [289] the Court denied Defendants' Motion to Dismiss for qualified immunity.   The *Hefley* Court noted that the Eleventh Amendment bars a litigant from pursuing monetary damages against the State, and the State's officials are protected with immunity; however, the Amendment does not bar '...injunctive relief against state officials." [290] In *Hefley*, the Plaintiffs were allowed to pursue purely equitable relief. [291]

261.   "Qualified immunity is only an immunity from a suit for money damages and does not provide immunity from a suit seeking declaratory or injunctive relief."[292] "A state and its officers are not entitled to Eleventh Amendment protection, however, where Plaintiffs seek only prospective, injunctive relief." [293] The same is true for awards of costs and attorneys' fees made pursuant to 42 U.S.C.

---

[288] *Denius v. Dunlap*, 209 F.3d at 959; see also, *Burgess v. Lowery,* 201 F.3d 942 30073, *1 (7th Cir. 2000)).
[289] 2023 U.S. Dist. LEXIS 44398, *6 (E.D. Mich. 2023).
[290] *Id.* at 6.
[291] *Id.*
[292] *Hydrick v. Hunter*, 669 F.3d 937, 939-940 (9th Cir. 2012).
[293] See *Gray v. Laws*, 51 F.3d 426, 430 n.1 (4th Cir. 1995); *see Edelman*, 415 U.S. at 664-68.

§ 1988."[294]

262.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

      i.     Return of all seized inventory;

      ii.     Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

      iii.     Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances; and

      iv.     Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

---

[294] *Mainstream Loudoun v. Board of Trustees of the Loudoun County Library*, 2 F. Supp. 2d 783, 790 (E.D. Va. 1998).

v.     All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi.    Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.   That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.  That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and

to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.    Plaintiffs seek attorney's fees.

## COUNT XV: DECLARATORY JUDGMENT

263.   This court has subject matter jurisdiction pursuant to 5 U.S.C. §§ 701-706 (APA); 28 U.S.C. § 2201 (Declaratory Judgment Act); and 16 U.S.C. §§ 1540(g)(1)(A) and (C) and (g)(2)(A) and (B).

264.   The relief requested is authorized by 28 U.S.C. § 2201 (declaratory judgment), 28 U.S.C. § 2202 (injunctive relief), and 5 U.S.C. §§ 701-706 (APA).

265.   This Court also has jurisdiction pursuant to 28 U.S.C. § 1331, which grants the district courts "original jurisdiction of all civil actions arising under the . . . laws . . . of the United States."

266.   Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(e)(1) because a substantial part of the events or omissions giving rise to the claims occurred in this district, a substantial part of the property that is the subject of the action is situated in this district, or the Plaintiffs resides in this district.  In addition, venue is appropriate under 16 U.S.C. § 1540(g)(3)(A) because the violation occurred in this district. Venue is appropriate also under 5 U.S.C. § 703.

267.   An actual, justiciable controversy exists between the parties within the meaning of 28 U.S.C. § 2201.

268.   The federal Government has waived sovereign immunity in this action pursuant to 5 U.S.C. § 702 and 16 U.S.C. § 1540.

269.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

i.   Return of all seized inventory;

ii.   Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

iii.   Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances;

iv.   Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition

of legal hemp under both federal and Texas law;

    v.   All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

    vi.  Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

    vii. That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

    viii. That Law Enforcement shall be required to follow Texas

Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.  Plaintiffs seek attorney's fees.

## REQUEST FOR TEMPORARY RESTRAINING ORDER AND TEMPORARY INJUNCTION

270.    Plaintiffs seek a Preliminary and Permanent Injunction as to:

i.      Return of all seized inventory;

ii.     Plaintiffs seek the ability  ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC with Certificates of Analysis  in the City of Allen and County of Collin, Texas;

iii.    Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances; and

iv.     Harvested cannabis material and products containing cannabis and

cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

v.     All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi.     Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC" contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii.     That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii.     That Law Enforcement shall be required to follow Texas Department

of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted; and

ix.    Plaintiffs seek attorney's fees.


271.    In order to obtain a Temporary or Permanent Injunction, Plaintiffs must show: "…(1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not issued; (3) that the threatened injury to [Plaintiffs] outweighs any damage the injunction might cause [to Defendant]; and (4) that the injunction will not disserve the public interest." [295]

272.    "A straightforward reading of §1639*o* [of the Federal Farm Bill of 2018] yields a definition of hemp applicable to all products that are sourced from the cannabis plant, contain no more than 0.3 percent delta-9 THC, and can be called a derivative, extract, cannabinoid, or one of the other enumerated terms." [296] "The

---

[295] *DSC Communs. Corp. v. DGI Techs., Inc.,* 81 F.3d 597, 600 (5th Cir. 1996); see also *O'Connor v. Smith,* 427 Fed. Appx. 359, 365 (5th Cir. 2011) (citing *VRC LLC v. City of Dallas,* 460 F.3d 607, 611 (5th Cir. 2006) (citing *Dresser-Rand Co. v. Virtual Automation Inc.,* 361 F.3d 831 (5th Cir. 2004)).
[296] *AK Futures LLC v. Boyd St. Distro, LLC,* 35 F.4th 682 (9th Cir. 2022).

conclusion that AK Futures' delta-8 THC products are lawful necessarily depends on the veracity of the company's claim that these products contain no more than 0.3 percent delta-9 THC." [297]   "Further evidentiary support is not required at this [preliminary injunction] stage." [298]

273.   Plaintiffs have a substantial likelihood of success on the merits. Defendants entered, searched and seized items in a business in an area which is not open to the public.   Defendants acted under color of a search warrant that is overbroad and vague and based upon misinformation, lies, and constitutional violations with an overbroad, vague warrant to seize legal product. Defendants violated clear, long-standing rules of law and constitutional rights of Plaintiffs by searching and seizing within a business without appropriate probable cause to search and seize legal items. Defendants utilized testing on legal products purchased from Plaintiffs that caused the product to become illegal as the testing methodologies failed to use current appropriate methods of chemical protection of any THCA. Plaintiffs are likely to win on the merits.

274.   Plaintiffs are facing a substantial threat of irreparable injury. Defendant seized approximately $10,000.00 in legal inventory.[299] The Court held in *City of*

---

[297] *Id.* at 691.
[298] *Id.*
[299] See Exhibit "B," line 8.

*Corpus Christi v. Maldonado*,[300] "… a seller does have a vested property right in the possession of legal, physical items of inventory that it owns."[301]   The *Maldonado* Court found that the business owner's property rights were irreparably harmed wherein legal products were made illegal and seized by law enforcement and granted a temporary injunction of the unconstitutional ordinance. [302] In that case, Plaintiffs "… demonstrated irreparable harm to a vested property right resulting from the enforcement of the penal ordinances, and that the trial court had jurisdiction to enter its temporary-injunction order even if prosecution was imminent as the City maintains." [303]

275.   The danger of irreparable injury continues daily for Plaintiffs and an injunction would not inflict any damage on law enforcement if they were ordered to not rely solely upon the test kit. The threatened injury to Plaintiffs outweighs any damage the injunction might cause to the Defendants.

276.   The public is not endangered by Plaintiffs' products that were seized and the public would not be disserved by an injunction to stop officers' enforcement of the ordinance.  Much of the public uses legal hemp for post-traumatic stress disorders, insomnia, anxiety, pain, and a variety of other physical ailments, so the

---

[300] 398 S.W.3d 266, 210 (Tex.App. - Corpus Christi 2011).
[301] See *Morrow*, 230 S.W.3d at 240; *Plant Process Equip., Inc. v. Harris*, 579 S.W.2d 53, 55 (Tex.App. - Houston [14th Dist.] 1979, no writ).
[302] See generally *City of Corpus Christi v. Maldonado*, 398 S.W.3d 266.
[303] *Id*. at 271.

public would likely be in favor of this injunction and certainly not harmed by it. Plaintiffs provide a service to the community and even veterans and the elderly rely upon their THC products for post-traumatic stress disorders and other issues.[304]

277.   Consequently, a temporary injunction is necessary and required in this cause to protect Plaintiffs.

278.   To succeed in the request for permanent injunction, '"[t]he party seeking a permanent injunction must meet a four-part test. It must establish (1) success on the merits; (2) that a failure to grant the injunction will result in irreparable injury; (3) that said injury outweighs any damage that the injunction will cause the opposing party; and (4) that the injunction will not disserve the public interest."' [305]

279.   Plaintiffs will succeed on the merits.  Defendants entered, searched and seized items in a business in an area which is not open to the public.  Defendants acted under color of a search warrant that is overbroad and vague and based upon misinformation, lies, and constitutional violations. Defendants violated clear, long-standing rules of law and constitutional rights of Plaintiffs by searching and seizing within a business without appropriate probable cause to search and seize *legal* items.

---

[304]   See Exhibit "B," line 6.
[305] *O'Connor v. Smith*, 427 Fed. Appx. 359, 365 (5th Cir. 2011) (citing *VRC LLC v. City of Dallas,* 460 F.3d 607, 611 (5th Cir. 2006) (citing *Dresser-Rand Co. v. Virtual Automation Inc.,* 361 F.3d 831 (5th Cir. 2004)).

Plaintiffs are likely to win on the merits.

280.   Unless enjoined by this Court, Defendants will continue to harass, assault, arrest, and without legal justification, take the property of Plaintiffs. Plaintiffs will continue to be deprived of the property without due process of law, and their livelihoods and reputations ruined.

281.   Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiffs urge the Court to grant the aforementioned relief.

282.   There is a substantial likelihood that Plaintiffs will prevail at trial and establish that the products that are the subject of this lawsuit are legal under state and federal law and that Defendants' actions were illegal and violative of Plaintiffs' civil rights under the Fourth, Fifth, and Fourteenth Amendments to the U.S. Constitution.

283.   A Temporary and Permanent Injunction are necessary to prevent further illegal actions on the part of the Defendants and to ensure that the Plaintiffs suffer no additional violations of their constitutional rights. These orders are also necessary to prevent Plaintiffs from suffering irreparable injury to their business and reputation. Furthermore, Plaintiffs would have no adequate remedy at law if Defendants were allowed to continue their illegal and destructive course of conduct.

284.   Granting the requested preliminary relief would serve the public interest. The public must have faith in the fact that law enforcement will enforce the

laws as they are written, and not create their own. We have a legislative process charged with that responsibility.

285.   Plaintiffs also request the Court order all property seized by the Defendants to be returned immediately, as it was not illegal when it was seized, and its destruction is the only purpose served by law enforcement maintaining possession.

286.   This Court has authority under Federal Rule of Civil Procedure 65 to issue the preliminary relief requested by Plaintiffs.

**WHEREFORE, PREMISES CONSIDERED,** Plaintiffs request that this Court enter judgment against the Defendants and order the following:

a.      $1,00,000.00 compensatory damages in favor of Plaintiffs against Defendant NSI, Higher Testing and Pharmlabs;

287.   Plaintiffs seek attorney's fees and equitable relief and a Preliminary and Permanent Injunction as to:

   i.  Return of all seized inventory;

   ii. Plaintiffs seek the ability to operate without interference by law enforcement or any other governmental agency with respect to any products that have been confirmed by an ISO accredited laboratory using reliable testing methods to not be above 0.3% delta-9 THC

with Certificates of Analysis in the City of Allen and County of Collin, Texas;

iii.   Plaintiffs seek to be free from further searches or seizures conducted without probable cause of products owned by Plaintiffs that are non-synthetic, naturally occurring, legal substances; and

iv.   Harvested cannabis material and products containing cannabis and cannabis compounds with laboratory test results showing that the Delta-9 THC concentration in them does not exceed 0.3% and which is packaged in raw form or manufactured form meets the definition of legal hemp under both federal and Texas law;

v.   All testing performed on post-harvested hemp and packaged hemp products by Law Enforcement or other State or Federal Agencies shall be performed using *High Performance Liquid Chromatography (HPLC)* and/or other analytical methods, such as GCMS, that include a chemical protection protocol to preserve the THCA molecule in its original and unmodified state. Specifically, the chemical protection should prevent the decarboxylation of THCA and allow THCA to be distinguished from Delta-9 THC;

vi.   Law enforcement be enjoined from seeking search warrants on the basis of "THC" and instead must specify the illegal "THC"

contraband sought under the Texas Controlled Substances Act. Only those items meeting said criteria should be seized due to the fact that not all products containing "THC" are illegal;

vii. That law enforcement be enjoined from seeking only Gas Chromatography testing on hemp products without the use of chemical or other protections to prevent the decarboxylation of THCA so that THCA can be distinguished from Delta-9 THC in the results of any lab tests;

viii. That Law Enforcement shall be required to follow Texas Department of State Health Services procedural guidelines where legal hemp has tested positive for Delta-9 in concentrations higher than 0.3 percent and to work in conjunction with DSHS' administrative rules codified in Texas Administrative Code, Title 25, Chapter 300, Subchapter A, with said rules to be followed prior to the execution of any search warrants or filing of criminal charges to allow an administrative investigation to be conducted.

ix. Plaintiffs seek attorney's fees, reasonable costs of this action; and

x. such other and further relief as the Court may deem appropriate.

Respectfully submitted,


329 S. Guadalupe St.
San Marcos, TX 78666
Tel: 512-392-5010
Fax: 512-392-5042


*/s/ **David K. Sergi***
David K Sergi
State Bar No. 1836000
david@sergilaw.com
Anthony J. Fusco
State Bar No. 24065259
tony@sergilaw.com
*Attorneys for Plaintiffs*

# EXHIBITS APPENDIX

Exhibits incorporated herein by reference:                Page(s)


Exhibit A Affidavit Velador…………………………        4, 10-12, 22, 39, 40, 79

Exhibit B Affidavit Khan…………………………        8, 10, 12, 24, 26, 36-38,

41-42, 47-48, 53, 59, 65,

71, 78-79, 82-82,   106-

108, 116-117, 132-133

Exhibit C May 2024 Allen PD letter……………….        10, 65, 70, 120

Exhibit D DEA subpoena……………………………        10, 70, 103

Exhibit E Order Staying Subpoena…………………        10, 36, 70, 75

Exhibit F 6 28 2024 Zoning Letter…………………        11

Exhibit G 07 16 24 Allen letter……………………        11

Exhibit H 7 15 24 Sergi ltr to P. Smith……………..        11, 65, 70

Exhibit I 9 18 24 Allen PD Letters…………………        12, 13, 35, 118

Exhibit J Texas Administrative code……………….        15, 93

Exhibit K 11 8 21 Sky Mktg. Order………………..        20

Exhibit L Boos Letter………………………………        22, 65, 71, 79, 103

Exhibit M Kight Letter……………………………...        23, 102, 104

Exhibit N Search Warrant…………………….. ……        27, 36, 38, 41, 47, 51, 65,

71, 78, 83, 102, 104, 106,

107, 108, 116

Exhibit O Email Armstrong Labs……………………   27

Exhibit P Affidavit of A. Holmes……………………   29, 30, 31, 32, 34, 35, 36,

51, 96, 102, 104, 108

Exhibit Q Motion to Quash DEA Subpoena…………   36

Exhibit R 7 16  24 City of Allen Smith email……….   70

Exhibit S 8 16 24 City of Allen Letter re Proposal….   70

Exhibit T Sergi Letter to City Attorney……………..   71

Exhibit U COA Sky Marketing Order………………   20

Exhibit V Law Enforcement Roundtable Discussion…   54, 66

Exhibit W Email Response from Armstrong 10 15 24…   33